BOARD OF SCHOOL TRUSTEES OF LAS VEGAS UNION SCHOOL DISTRICT No. 12, ET AL., PETITIONERS, *v.* MILDRED BRAY, AS SUPERINTENDENT OF PUBLIC INSTRUCTION OF THE STATE OF NEVADA, RESPONDENT.

No. 3321

January 24, 1941.                    109 P.(2d) 274.

*Roland H. Wiley,* District Attorney, for Petitioners.

*Gray Mashburn,* Attorney-General, *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, for Respondent.

## OPINION

By the Court, TABER, J.:

"An act concerning public schools, and repealing certain acts relating thereto" was approved March 20, 1911. Stats. of Nevada, 1911, 183. It will sometimes be referred to herein as the public school act. As amended, it appears in vol. 3, N. C. L. 1929, secs. 5650–5867.

Subdivision 4(a) of amended sec. 151 of said act (sec. 5798 N. C. L. 1929) reads: "Whenever any county shall have levied 35 cents on the hundred dollars assessed valuation of the county for elementary school purposes, if such levy does not bring in an amount of money equal to that required by law of such county for elementary school purposes, exclusive of bonds and interest thereon, the superintendent of public instruction shall apportion to said county from the state school reserve fund a sum of money such that taken with the amount raised by the levy of 35 cents on the hundred dollars by the county will be sufficient to make the sum required by law of such county for elementary school purposes; provided, that in the apportionment for July, 1925, said rate shall be 30 cents on the hundred dollars in counties having county high schools and said rate shall be 50 cents on the hundred dollars for combined elementary and high school purposes in counties levying a rate for such combined purposes."

Subdivision 5(a) of said amended section 151 is as

follows: "The superintendent of public instruction shall then apportion to any district in the state which, after receiving the regular state and county apportionment provided for above, shall lack the necessary funds to maintain its school properly, a special district relief apportionment from the state school reserve fund, whenever such district shall have levied (and there shall have been collected the first half of) a special district tax of not less than 15 cents on the hundred dollars of assessed valuation of the district. If the county in which such district is located has levied a total tax for county school purposes, exclusive of school bonds and interest thereon, amounting to 65 cents, but for the apportionment in July, 1925, 50 cents on the hundred dollars of assessed valuation of such county, the state shall provide from the state school reserve fund a sum of money equal to not more than $5 per census child, for such relief apportionment to such district; provided, that if the state school reserve fund is sufficient, no district shall receive less than $50 relief apportionment under the provisions of this act. In case the county levy for school purposes in the county in which such district is located is less than 65 cents; but for the apportionment in July, 1925, 50 cents on the hundred dollars of assessed valuation for county school purposes, exclusive of school bonds and interest thereon and any county relief rate, the county shall provide from its county general fund such special relief apportionment to be made by the superintendent of public instruction; provided, such district has submitted a budget as now required by law for such year, and the moneys provided from this and other sources and taxes shall not exceed such budget requirements."

Subdivision 5 (b) of said amended section provides that said subdivision 5 (a) shall apply to any district having more than 200 pupils in average daily attendance as shown by the last preceding annual school report, only to the extent of 200 pupils.

Subdivision 2 of amended section 152 of the public school act (sec. 5799 N. C. L. 1929) provides that: "It shall be the duty of the board of county commissioners of each county, not later than the April meeting, 1925, so as to provide funds under this act for the school year 1925–1926, and annually thereafter at the time of levying their county taxes, after considering the needs of the several school districts within their county as shown by the school budgets submitted as required by law, to levy a county school tax sufficient to provide $625 per apportionment teacher and not less than $2 per pupil in average daily attendance, subject, however, to the provisions of paragraph 5(a) in section 151 of this act."

With reference to the provision last quoted, we note that by an earlier section of the public school act the board of county commissioners of each county is required, annually, at the time of levying other county taxes, to levy a county school tax, not to exceed 50 cents on each $100 valuation of taxable property. Section 139, as amended (sec. 5787 N. C. L. 1929). This section has not been discussed, nor any mention of it made by either petitioners or respondent.

Pursuant to the provisions of subdivision 2 of section 152, in order to provide funds for the schools of Clark County's twenty-three school districts for the school year 1939–1940, the board of county commissioners of that county, at its April meeting in 1940, levied a county school tax of 50 cents on each $100 of the assessed valuation of the taxable property in said county. The amount raised by this levy, on the assumption of a 100 percent payment of the tax, would be $80,375. The amount of funds required to be raised for said school year under the provisions of said subdivision 2 amounted to $72,-794. The amount which would be raised by the levy of 35 cents on each $100 assessed valuation in Clark County for said school year would be $56,262.55, being $16,-531.45 less than said required sum.

The superintendent of public instruction is required

to make a semiannual apportionment from the state distributive school fund to the state school reserve fund of a sum of not more than $30,000. This apportionment, under the provisions of said section 151 (sec. 5798 N. C. L. 1929), is required to be made immediately after the state controller makes his semiannual report in January and July of each year. When the petition in this proceeding was filed, and after the July 1940 apportionment to the state school reserve fund, there were sufficient moneys in the latter fund for the apportionment to Clark County, as well as to other counties of the state entitled to said elementary school apportionment, such sums of money as, taken with the amounts raised by the 35-cent levies, would be sufficient to make up the sums required by law of such counties for elementary school purposes.

On January 9, 1940, respondent declared in writing that commencing in July 1940 she would apportion to Clark County its share of the state school reserve fund by using as a basis the actual amount collected by the 50-cent levy hereinbefore mentioned. In this proceeding petitioners pray that respondent be required to use, as the basis for apportioning Clark County's share of the state school reserve fund, the amount raised by the levy of "35 cents on the hundred dollars assessed valuation of the county for elementary school purposes," as provided in said subdivision 4(a) of section 151 (sec. 5798 N. C. L. 1929).

It does not appear how the statutory provisions here in controversy were construed by the superintendent of public instruction prior to 1931; but since that year, and until 1940, it has been the practice of the three persons, including respondent, who have held the office of superintendent of public instruction, to apportion the state school reserve fund on the basis of the 35-cent levy, irrespective of the actual levy.

The first amendment to section 152 was in 1915, the last in 1925. The first amendment to section 151 was

in 1917, the last in 1929. Both sections were amended in 1917, 1919, 1921, 1923 and 1925. Stats. of Nevada, 1917, 234–237; 1919, 154–157; 1921, 268–273; 1923, 328–332; 1925, 280–284. At the five sessions just mentioned, the changes in these two sections were in each instance made by one amendatory act. The language of subdivisions 4(a), 5(a) and 5(b) of section 151, and that of subdivision 2 of section 152, have remained the same from 1925 to the present time. No change was made in subdivision 4(a), subdivision 5(a), or subdivision 5(b) of section 151 when that section was amended in 1929.

It is agreed that subdivision 4(a) of section 151 and subdivision 2 of section 152 of the public school act are the statutory provisions chiefly involved in this controversy. The respective parties assert that these provisions are so plain, certain and unambiguous, and their meaning so clear and unmistakable, that there is no occasion for construction. Nevertheless, they differ widely as to their meaning. The court is of opinion that the case is one requiring statutory construction.

Petitioners contend that their interpretation of the statutory provisions under discussion should be upheld because (1) of the common usage and practice by the several executive heads of the school department, acquiesced in by governing bodies of every board of school trustees and every board of county commissioners in the state for a period of at least nine years; (2) of implied legislative endorsement in that the legislature, presumed to be familiar with the aforesaid executive practice, has not at any time modified the statute to provide a different rule of apportionment; (3) of the maxim "Expressio unius est exclusio alterius"; (4) of the rule that where one section of a statute treats specifically of a matter, it will prevail over other sections in which incidental or general reference is made to the same matter; and (5) because the construction placed upon this legislation by the attorney-general would

defeat its main purpose, which is to give additional state aid to the poorer counties having low assessed valuations.

Respondent, on the other hand, takes the position that her interpretation should be adopted for the reasons: (1) that the language of subdivision 2 of section 152 is clear, that there is no limitation on the rate of taxation contained in that provision, that petitioners admit, by reason thereof, that Clark County was required to raise $72,794 by taxation for elementary school purposes for the school year 1939–1940, and that a greater amount of money would be raised for that school year by the 50-cent levy than required by said subdivision 2; (2) that if the legislature had intended by subdivision 4(a) of section 151 to provide that the tax rate of 35 cents on the $100 of assessed valuation was to be the basis upon which the right to participate in apportionments of the state school reserve fund was to be premised, irrespective of a higher rate of taxation and the raising of more money than required by law by any county, such intent would not have been hidden away in express language clearly providing in specific terms the condition precedent to the right of apportionment; (3) that it would be judicial legislation if the court should uphold petitioners' contention; (4) that there is no limitation on the amount of money to be raised by county taxation save as to the minimum amount as provided in said subdivision 2 of section 152, and the board of county commissioners of Clark County, having levied a tax more than ample to meet the requirements of that provision, has by its own act placed that county without and beyond the purview of said subdivision 4(a) of section 151 with respect to its right to now participate in the apportionment of the state school reserve fund; (5) that if there is an irreconcilable repugnancy between the provisions under discussion, the one later in position in the statute should control; (6) that if said provision in section 151 is to be construed as contended for by petitioners, then

subdivision 2 of section 152 is meaningless; (7) that if said provision of section 152 should not produce sufficient money for some particular school district, such district could and would have recourse to the state school reserve fund, or to the county general fund, under the provisions of subdivision 5(a) of section 151; (8) that if the board of county commissioners of Clark County desired to take advantage of subdivision 4(a) of section 151, it had ample notice of the superintendent's change in the method of apportionment; (9) that the rule of implied legislative indorsement and long - continued administrative practice have no application where the language of the statute is clear and explicit; (10) that 4(a) of section 151 applies only where the board of county commissioners levies a specific tax of 35 cents on the $100, not where a levy of more than 35 cents on the $100 is made.

■■ No constitutional questions are presented for the court's consideration. It may also be observed that it is not within our province to decide which is the better or wiser method for distributing school funds; that is a responsibility of the legislature. Our constitution contains no provisions for the distribution of school funds, and it is not for the court to say that one method should be adopted in preference to another. We are not to substitute our judgment for that of a coordinate branch of the government working within its constitutional limits. Sawyer v. Gilmore, 109 Me. 169, 83 A. 673.

■ The statutory provisions we are called upon to construe are all contained in the chapter relating to school funds, being chapter 10 of the public school act. Our prime concern is to ascertain the intent of the legislature. The court must, if possible, and if consistent with the intention of the legislature, give effect to all the statutory provisions in controversy, and to every part of them. It is our duty, so far as practicable, to reconcile the various provisions so as to make them

consistent and harmonious. The court, in interpreting these provisions, must also have in mind the purposes sought to be accomplished and the benefits intended to be attained.

In view of the fact that subdivision 4(a) of section 151 and subdivision 2 of section 152, in their present form, became the law at the same time, by one and the same legislative act, there is a strong presumption that neither provision was intended to override the other. It is only where there is an irreconcilable conflict, and all other means of ascertaining the legislative intent have been exhausted, that a later provision will control an earlier one. The court does not discern such conflict here, even if petitioners' interpretation of section 151, 4(a), be adopted.

But should petitioners' construction of that provision be upheld? It should not if, as contended by respondent, the levy therein mentioned means a specific levy of exactly 35 cents, and that only. If it were reasonably clear that such was the intention of the legislature, that would be the end of the matter, and this proceeding would have to be dismissed; for, while the court has the power to construe an uncertain or ambiguous statute, it cannot substitute a different one, no matter how unwise or unreasonable the legislative enactment under consideration may seem to be. But where the true intention of the lawmaking body is not expressed by the language employed in a statute when that language is given its literal meaning, it is the duty of the court to adopt a construction which will carry out the legislative intention, in order that the real purpose and intent of the legislature may prevail over the literal import of the words. 25 R. C. L. 967–970, sec. 222; 59 C. J. 952–958, sec. 569.

When the meaning of a statutory provision is doubtful the courts, in endeavoring to discover the meaning intended by the legislature, give consideration to the effect or consequences of proposed constructions. If the language fairly permits, the courts will avoid

construing it in a manner which will lead to an unreasonable result. 59 C. J. 969–971, sec. 574; Crawford on Statutory Construction, sec. 177; 25 R. C. L. 1017–1019, secs. 255, 256.

■ It is clearly the purpose of subdivision 4(a) of section 151 to give additional aid to some counties. What would be the effect of adopting respondent's construction of that provision? Only those counties which levy exactly 35 cents on the $100 for elementary school purposes would be entitled to its benefits. This would mean that few, if any, counties would ever receive such aid. It would also mean that the counties most in need of aid would be unable to obtain it under the provisions of said subdivision 4(a). That the legislature intended such results seems unreasonable.

Respondent says that if the board of county commissioners of Clark County desired to take advantage of section 151, 4(a), it had ample notice of the superintendent's change in the method of apportionment. It is true that such notice was given some three months before the board made its 50-cent levy; but it is also true that this announced change could not change the law. Furthermore, if respondent's construction of section 151, 4(a), is correct, Clark County could not obtain any relief under it, because if the board of county commissioners had made a levy of exactly 35 cents, it would have violated the provisions of section 152, 2. We cannot believe it was the legislative intent that a county could obtain aid under the provisions of one section by violating those of another.

■ Respondent argues that if petitioners' construction of section 151, 4(a) is correct, then section 152, 2, is meaningless. In the court's opinion this is not necessarily so. The latter provision is one for the levy of a school tax, the former one for the apportionment of school funds. There is a difference between assessment or levy on the one hand, and apportionment or distribution on the other. Sawyer v. Gilmore, supra; Miller v. Korns, 107 Ohio St. 287, 140 N. E. 773. A provision

requiring a higher levy than 35 cents on the $100 is not necessarily repugnant to or in conflict with one granting state aid on the basis of a 35-cent levy. Effect can be given to both provisions.

Respondent makes the further contention that if section 152, 2, should not produce sufficient money for a particular school district, such district could obtain aid under the provisions of subdivision 5(a) of section 151. If that be true, it by no means follows that section 151, 4(a), must be subordinated to 5(a) of the same section and subdivision 2 of section 152. We perceive no good reason why the provisions of 5(a), section 151, for giving state aid to school districts under certain special and limited conditions, should be held to override 4(a) of that section, which provides for state aid to counties under other and different conditions. The legislature could have omitted 4(a) of section 151 when the amendatory act of 1925 was enacted, but it did not see fit to do so; nor has any of the seven succeeding legislatures done so. Even when section 151 was amended in 1929, subdivision 4(a) of section 151, as we have seen, was retained without change.

Finding no irreconcilable repugnance in the provisions of 4(a), section 151, and those of 5(a), section 151, and subdivision 2 of section 152; having also in mind our duty to give effect to and harmonize, if reasonably possible, all these provisions, and every part of them; and being of the opinion that the construction of 4(a), section 151, contended for by respondent does not conform to the intent and purpose of the public school act, particularly chapter 10 thereof: we hold that the 50-cent levy made by the board of county commissioners in April 1940 included the 35-cent levy spoken of in 4(a), section 151, and that Clark County was and is entitled to have apportioned to it, out of the state school reserve fund, the sum of $16,531.45, as prayed in the petition.

In reaching the conclusion that petitioners' construction of 4(a), section 151, is correct, the court has

been influenced in no small measure by the construction given the statutory provisions here in controversy during past years. From as far back as 1931, at least, these provisions have been administered upon the basis of the construction contended for by petitioners, and since 1925 no changes have been made in them by the legislature. Respondent is right in saying that the rules concerning executive and administrative construction have no application where the statutory provisions are so clear, certain and free from ambiguity as not to require construction; but where, as here, their meaning is not clear or certain, and the court must perforce endeavor to construe them in conformity with the real intention of the legislature, the construction uniformly adopted over a period of at least some nine years by the officials entrusted with the administration of the provisions in question, while not conclusive, is of much persuasive force. State v. Glenn, 18 Nev. 34, 1 P. 186; State v. Grey, 21 Nev. 378, 32 P. 190, 19 L. R. A. 134; State v. Brodigan, 35 Nev. 35, 126 P. 680; State v. Cole, 38 Nev. 215, 148 P. 551; Seaborn v. Wingfield, 56 Nev. 260, 48 P. (2d) 881; Crawford on Statutory Construction, section 219; 59 C. J. "Statutes," secs. 608, 609; 25 R. C. L., "Statutes," sec. 274.

Whether any changes should be made in the statutory provisions here construed is a question for the consideration of the legislative branch of our state government.

The prayer of the petition is granted, and it is ordered and adjudged that the peremptory writ of mandamus be issued herein commanding respondent, upon receipt of the writ, to forthwith apportion to the county of Clark, out of the state school reserve fund, the sum of $16,531.45 as prayed in the petition.