## LOTT v. STATE.

No. A-11250.   Oct. 11, 1950.

(223 P. 2d 147.)

Shockley T. Shoemake and Carl C. Wever, Pawhuska, and Walter Mathews, Cushing, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The plaintiff in error, Homer Lott, hereinafter referred to as defendant, was charged by information filed in the district court of Osage county with the crime of assault with a dangerous weapon, was tried, convicted, and sentenced to serve a term of 18 months in the State Penitentiary.   Appeal has been duly perfected to this court.

The information was drawn under section 1870, O.S. 1931, Tit. 21 O.S.A. § 645, reading as follows:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot another, with any kind of firearm or airgun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

The information, among other allegations, provides:

" * * * on or about the 15th day of September, 1948, in said county and state, the defendant, Homer Lott, then and there being, did then and there wrongfully, unlawfully and feloniously commit the crime of felonious assault with a dangerous weapon in the manner and form as follows, to-wit:

"That is to say that said defendant, Homer Lott, then and there being and within the jurisdiction of this court, did on or about the 15th day of September, 1948, unlawful-

ly, wrongfully and feloniously commit an assault and bat-
tery upon the persons named as follows, to-wit: Francis
E. Cooper, Joe Benton Allen, William Clarence DeVoy,
and Thomas Smith Mathes, by means of such force as
likely to produce great bodily harm and injury or death;
that is to say that the said defendant was then and there
driving and propelling a 1941 Dodge Pickup automobile
in a dangerous and reckless manner while under the in-
fluence of intoxicating liquor; and while so driving on
East Main Street, being a public highway at all times
herein mentioned, and at a point on said street approxi-
mately sixty (60) feet west of Revard Avenue intersect-
ing said street in the city of Pawhuska, Oklahoma, did
then and there propel said automobile over and against
another automobile on the same highway being driven
by Francis E. Cooper, then and there and thereby caus-
ing a collision between said automobiles, and throwing
the occupants of the said automobile being driven by the
said Francis E. Cooper and himself from their normal
seats in and about the said automobile in which they
were riding, and propelling and hurling them by force
against the body of the automobile in which they were
riding, cutting them with shattered glass and otherwise
injuring them to the following extent, to-wit: the said
Francis E. Cooper being cut and lacerated about the head
and face and body; * * * with the unlawful and felonious
intent * * *'' etc.

The undisputed evidence in this case discloses that
around midnight on September 15, 1948, the defendant
drove his 1941 Dodge Pickup automobile west along Main
street in the city of Pawhuska at a high and reckless
rate of speed; that one Bill Fish was in the front seat with
the driver and that a young man, Thomas Mathes, whom
Fish had invited to ride, was in the bed of the pickup;
that defendant was driving from the county fair, which
was being held three and one-half miles south of Paw-
huska; defendant had stopped at the stop sign where he
turned into Main street, but speeded up his car and was

driving at a terrific rate of speed down Main street and at a point close to the Rock Apartments in the business part of the city he left the north side of the street as he drove west and crashed into a Ford Tudor car being driven east at a slow rate of speed by Francis Cooper, and in which car were two A. & M. College students, William Clarence DeVoy and Joe Benton Allen. There was a terrific impact between the pickup and the Cooper car and all occupants of the Ford car were seriously injured and two of the boys were knocked unconscious; the two passengers in the defendant's car were seriously injured, but the defendant was the least injured of all. The undisputed and conclusive evidence developed that defendant was drunk at the time he drove his car into the Ford car and had been observed at the county fair by the driver of the Ford car and by other witnesses a few minutes prior to the collision, and in a drunken condition. At the hospital the physician had to obtain the aid of officers to quiet defendant, who was using obscene language, was resisting being ministered to by the medical attendants.

The defendant testified, and did not deny any of the testimony of witnesses for the state, but, on the other hand, in an apparent effort to overcome the allegations in the information and possible deductions to be drawn from the victim, Cooper having observed the way in which he had shortly prior to the collision been conducting himself at the fair, and to overcome the allegation in the information of "unlawful and felonious intent," sought to show by his testimony that he was so drunk at the time he was driving the pickup and collided with the Ford car that he did not know what he was doing, if in fact he was driving his pickup. He did admit, however, that he remembered stopping at the stop sign on

Main street and observed a "scooter" that he passed just prior to driving into the car being driven by Francis E. Cooper. However that may be, there is no evidence in the record tending to prove actual and conscious intent on the part of the defendant to run his pickup into the Cooper car other than might be inferred from the fact that he did actually drive his pickup from the north side of Main street over about three feet past the center of the street and into the Cooper car, and there was no evidence of defendant having any mechanical or other trouble with his car that could have placed it out of control. On the other hand, the evidence conclusively indicated that defendant had complete control of his car, from a mechanical standpoint; indicated drunkenness, reckless driving and a wanton disregard for the safety of other motorists as well as pedestrians along Main street in Pawhuska.

Although some ten specifications of error are set out in petition in error, counsel for defendant in brief reduce their contentions to the proposition:

"The question presented here is, does proof of culpable negligence in these cases take the place of intent to do bodily harm? And, did the court properly define culpable negligence?"

In their brief counsel criticize a number of the instructions given by the court, and state that they excepted to instruction 12 defining culpable negligence, and instruction 16 concerning intent, but the record filed in this court fails to so show, and of course the record made at the time as disclosed by the transcribed notes of the reporter prevail. Counsel argue:

"Indeed it is very apparent that the trial court considered that there was no evidence of such intent from the fact that he instructed the jury that culpable negligence on the part of the defendant took the place of actual

intent. This clearly is not the law in cases of assault where death of the person assailed is not occasioned. The very essence of the offense charged, and the information expressly alleges 'intent to do bodily harm.' Tit. 21, Section 645, O.S. 1941. One by his culpable negligence may commit manslaughter in the second degree but in such instances intent, such as intent to kill, is not an ingredient of the offense. Title 21, Section 716, O.S. 1941. Also, under title 21, section 711, O.S.A. 1941, one may commit manslaughter in the first degree by causing the death of another while he, the aggressor, is committing a misdemeanor; but here intent to kill is not an essential ingredient of the offense, and he may even commit murder by doing an act imminently dangerous to others and evincing a depraved mind regardless of human life (Title 21, section 701, O.S. 1941) but here the intent to kill is not an element. There is no such thing in the law to the effect that culpable negligence takes the place of intent where intent is an essential element of the offense. The penal code provides that no act is criminal or punishable except as prescribed by it. (Title 21, section 2, O.S. 1941). Thus where the act is required to be intentional nothing can be substituted for it."

Counsel further argue in reply brief:

"It is quite apparent that the Legislature merely intended that only where culpable negligence, or act done while committing some offense, produced the dire effect of death that it would supply the element of intent."

Counsel further state:

"The case of Winkler v. State, 45 Okla. Cr. 322, 283 P. 591, as well as other cases cited on the point in the opinion, [Lamb v. State, 70 Okla. Cr. (1940) 236, 105 P. 2d 799] were manslaughter cases."

The argument of counsel is interesting and in fact is an ingenious one. But this court in the past has sought to ascertain the legislative intent in situations as in the instant case where the assault did not produce death, and the distinction here urged was not recognized.

Counsel is in error in stating that Winkler v. State, 1929, supra, involved homicide. In that case a school bus had stopped on the highway to let off school children and the defendant there drove along said highway and into one child, breaking her leg. It was not charged in the information in that case that Winkler, the defendant, was intoxicated while operating his car, which at that time constituted a felony, Laws 1923, ch. 16, p. 22, § 3, Tit. 47 O.S.A. § 93, but that he was operating an automobile in manner forbidden by sec. 2, c. 16, Session Laws 1923, 47 O.S.A. § 92, a misdemeanor. The court, after citing various cases where persons were killed by reckless drivers of automobiles, said [45 Okla. Cr. 322, 283 P. 592]:

"If, while so operating an automobile in violation of law, a person should injure a pedestrian or other person without causing death, and such unlawful act is the proximate cause of the injury, he is likewise guilty of a crime. If defendant is guilty of culpable negligence in passing the school truck, as it was discharging its passengers, at a dangerous speed, or without coming to a stop or having his car under control, * * * he is guilty of a crime. *In such case the commission of a misdemeanor in operating an automobile in the manner forbidden by section 2, c. 16, Session Laws 1923, takes the place of and supplies the unlawful intent.* 1 Bishop's Crim. Law (8th Ed.) § 313, et seq. It then becomes a question of fact whether or not defendant at the time was guilty of culpable negligence in operating an automobile upon the highway in violation of the law."

The prosecution in the Winkler case was under section 1764 Comp. Stat. 1921, being Title 21 O.S.A. § 645, as in the instant case. The Winkler case was later cited with approval by this court in the case of Lamb v. State, supra, the only case cited by the Attorney General in his brief filed herein. There the court held:

" 'Culpable negligence' is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case. * * *

"Where the intent with which an offense is committed is an essential element of such offense, the operating of an automobile by a person charged with an offense in a manner forbidden by law takes the place of and supplies the unlawful intent. It then becomes a question of fact whether or not defendant at the time was guilty of 'culpable negligence' in operating an automobile upon the highway in violation of the law."

Also, in a comprehensive opinion by Judge Jones in Beck v. State, 1941, 73 Okla. Cr. 229, 119 P. 2d 865, the rule announced in the Winkler case was again affirmed. In the Beck case a pedestrian in the city of Tulsa was knocked down and injured by being struck by an automobile being driven by an intoxicated driver.

It is not reasonable that it was the intention of the Legislature that the culpable negligence rule should not apply in cases where the injuries failed to produce death, but might apply if death ensued, although the defendant in the first class of cases might be more intoxicated, more reckless and have demonstrated the ultimate in culpable negligence, but by divine providence the life of the victim was somehow spared. As stated by Judge Furman in Parker v. State, 7 Okla. Cr. 238, 122 P. 1116, 1118, 124 P. 80:

"Penal laws are not enacted for the encouragement of crime and the protection of criminals, but they are enacted for the sole and express purpose of punishing and suppressing crime and thereby protecting society, and it is the paramount duty of courts to so construe them as to promote this purpose."

The thought is impelling that the correct conclusion was reached in Winkler v. State, supra. At any rate, the rule of law there announced and approved by this court in the Lamb and Beck cases, each involving a misdemeanor and where the prosecution was conducted under the same provision of the statutes as here, is now the settled rule of law in this state, and by reason of what we have stated, the doctrine of stare decisis will be followed.

We have considered the instructions, and as a whole, and so considered in connection with the evidence of the case, find that they fairly state the law applicable to the case, and that they are sufficient, particularly in definition of culpable negligence and concerning the question of intent.

Where no exceptions to any of the instructions given by the court are taken, and no further instructions are requested by the accused, the accused as a matter of right has no cause for complaint against the instructions given, unless they appear to be fundamentally wrong and prejudicial to the rights of the accused. McCollom v. State, 22 Okla. Cr. 46, 209 P. 781; Inman v. State, 22 Okla. Cr. 161, 210 P. 742; Russell v. State, 17 Okla. Cr. 164, 194 P. 242; Green v. State, 70 Okla. Cr. 228, 105 P. 2d 795.

The case is affirmed.

JONES, P. J., and BRETT, J., concur.