James M. HURLEY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13774.

Court of Criminal Appeals of Oklahoma.

July 27, 1966.

Charles V. Foor, McAlester, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

James M. Hurley was by information charged on May 4, 1965 in the district court of Pittsburg County with the offense of forgery in the second degree, after former conviction of a felony.

Defendant was tried before a jury, and the jury returned a verdict of guilty as charged, and then a verdict of guilty of forgery in the second degree, after former conviction of a felony, and left the punishment to be fixed by the court. The court sentenced defendant to serve from four to twelve years in the state penitentiary. Motion for new trial was filed and overruled, and appeal duly lodged in this Court.

According to the statement of counsel for defendant in his brief, this defendant was originally charged jointly with one William Edward Hobbs. There is nothing in the record before us to show this; although Hobbs appeared before the court as a witness for the State, and admitted that he was presently serving a term in the State Penitentiary for forgery. The attorney for defendant states that Hobbs entered a plea of guilty to the charge here prosecuted, and was sentenced.

Defendant was charged and prosecuted under Title 21 O.S.A. § 1577, which provides:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

It was alleged in the information that defendant cashed a "certain false, forged and counterfeited written instruent for the payment of money absolute" at the Nationwide Store, in McAlester, Oklahoma, in the sum of $30.

The State introduced five witnesses: the former manager of the Nationwide Store; the chief of police of McAlester; William Edward Hobbs; the vice-president and cashier; and the assistant vice president of the National Bank of McAlester; and also read the testimony of Mamie H. Smith (whose name was signed to the checks involved) as taken at the preliminary hearing.

William E. Hobbs testified that he wrote three or four checks, two of them payable to the defendant, and one to himself, and signed the name of his aunt, Mamie H. Smith, to the checks. That he received half of the proceeds from each of the

checks, and the defendant got the other half of the money. He testified that he wrote the checks, "to get some money, just to loaf around on." He stated that he had met this defendant in the county jail, and that he wrote defendant's name in two of the checks for him to cash because witness did not have an "ID card".

Witness Hobbs made no claim that the checks were given as an advance for work to be done for Mamie H. Smith, and did not indicate that any work was to be done for her. On cross-examination this witness testified in part:

"Q On all three of these checks you claim you split the money with Mr. Hurley? A Yes, sir. Q Even the one you cashed with your own Social Security card? A Yes, sir. Q Why? A Because he was my friend. He cashed them, I wanted to help him out. I mean, he was entitled to get half of what I git. Q And he didn't know they were forged? A No, sir."

Defendant testified in his own behalf, and his explanation of the checks was that he and Hobbs were to do some work for Mrs. Smith on a house she owned. He testified in part:

"A Well, the first check in question, I don't remember the exact date on it. He come to me that day and asked me would I like to do some work in the future. And I said I would. I was at that time not working. He said that he thought he had a job concerning the two of us. He would give me the job of helping and I would get half the money for doing the job. And I said that would be fine. He said, 'I have got to go out to Plantation Plaza nursing home and see my aunt', and he said, 'would you try and meet me over there at the ABC Cafe?' where my mother—where at this time my mother was a cook."

He testified that Hobbs was gone about an hour and forty-five minutes, and returned with a check dated December 29, 1964, for $20, made payable to this defendant, and signed "Mamie H. Smith." De-

fendant called the bank and asked if Mamie H. Smith had an account there, was told that she did have, and that the $20 check would be good. Defendant gave the $20 check to the manager of the Cafe and asked him to collect the money on it the next morning, as the bank was then closed. This was done, and the money delivered to this defendant the next morning, which would be December 30, 1964, and he stated that he gave Hobbs $10 of the money.

On the same day, December 30, 1964, Hobbs gave defendant another check, for $30, made payable to defendant, and signed Mamie H. Smith. Defendant took this check to the Nationwide Store and cashed it. The manager of the store called the bank and asked if Mrs. Smith's check for $30 was good, and was told that it was. He then gave defendant $30 in cash, and defendant gave Hobbs $15 of it. Hobbs was in the store with him at the time the check was cashed.

Defendant further testified that on that same day, December 30, 1964, he borrowed his mother's car and took Hobbs to the drivein window of the Bank, handed in a check for $30 made payable to and endorsed by Hobbs, together with Hobbs' social security card, and received $30. He kept $15, and gave the other $15 to Hobbs.

These three checks, together with Mrs. Smith's signature card from the Bank, were introduced and admitted in evidence.

Defendant testified that he did not know that the two checks payable to him, one for $20 and the other $30, and the one payable to William E. Hobbs for $30 and which he assisted Hobbs in cashing, were forgeries. Mrs. Smith testified at the preliminary that she had never hired the defendant to do any work for her, and stated that her nephew would not know how to do any work. Defendant admitted that he never at any time did any work for Mrs. Smith.

■ Defendant complains that the court erred in overruling the demurrer of the defendant, offered at the conclusion of the State's evidence, and devotes a major portion of his brief to this argument.

It is our opinion that this contention cannot be sustained. We agree with counsel for defendant that William E. Hobbs was an accomplice of defendant, but hold that his testimony was fully corroborated.

■■ There are three essential elements of forgery: a false writing or alteration of an instrument; the instrument as made must be apparently capable of defrauding, and there must be an intent to defraud. These three elements have all been conclusively shown by the State's evidence.

Counsel for defendant in his brief states: "The precise question raised on appeal is whether or not criminal intent is essential to constitute the crime of forgery, and whether or not the testimony bearing thereon, under proper instructions, is always a jury question, even when the State's own evidence directly proves that the defendant had no knowledge of said forgery."

In the case at bar, the evidence shows or tends to show that when Hobbs issued the check cashed by the Nationwide Store, and the other two checks admitted as evidence, he was acting conjointly with the defendant here involved, with a common purpose and fraudulent intent to effect a fraud upon Mrs. Smith. It is admitted by Hobbs, who wrote the checks and signed the name of Mrs. Smith thereto, that they were forgeries, and according to the evidence in the case, the jury was justified in finding that the defendant and William E. Hobbs did, by uttering and passing the forged checks as charged in the information, effect a fraud knowingly, as was intended. The essence of forgery is the making of a false writing, with the intent that it be received as the act of another than the party signing it.

■ In a prosecution for second degree forgery, it has long been held that the question of guilty knowledge, and whether there was an intent to defraud, are questions of fact for the jury to decide under the circumstances, and may be inferred from what the accused does and says, and from all the facts and circumstances involved in the transaction.

■ In the early case of Wells v. Territory, 1 Okl.Cr. 469, 98 P. 483, this Court held:

"Guilty knowledge that an instrument is forged may be found if the jury is satisfied from the facts and circumstances shown by the testimony that the defendant had reason to believe it was forged; but the inference is for the jury, and does not follow of necessity."

And in Taylor v. State, 65 Okl.Cr. 432, 88 P.2d 665, we said:

"The question of guilty knowledge, and whether there was an intent to defraud, are questions for the jury to decide under the circumstances. And the proof of this fact may be made by circumstantial, as well as direct, testimony."

■ The trial court did not err in overruling the demurrer to the evidence, and in submitting the case to the jury for its determination of the issues.

■ Counsel for defendant contends that the court erred in giving Instruction No. 10 to the jury. No exception was taken to this instruction when given, and we have often held that where no exceptions are taken, and no further instructions are requested by the accused, the accused as a matter of right has no cause for complaint against the instructions given, unless they appear to be fundamentally wrong and prejudicial to the rights of the accused.

■ We have carefully considered Instruction No. 10, and the other instructions given, as a whole and in connection with the evidence in this case, and are of the opinion that they fairly state the law applicable to the case, and that they were amply sufficient. See Lott v. State, 92 Okl.Cr. 324, 223 P.2d 147 and cases cited on this point.

■ Further, we have held that only assignments of error presented in the motion for new trial will be considered on ap-

peal, unless error complained of is fundamental. Defendant did not raise the question of the instructions in his motion for new trial. In Berg v. State, 97 Okl.Cr. 320, 262 P.2d 913, this Court said:

"This court will only consider those questions which are incorporated in the motion for a new trial and thereby submitted to the trial court and its ruling thereon excepted to and afterwards assigned for error unless the question is jurisdictional."

And see also Fitzgerald v. State, 97 Okl. Cr. 106, 259 P.2d 333; Johnson v. State, 97 Okl.Cr. 255, 261 P.2d 905; Chase v. State, Okl.Cr., 373 P.2d 259, and cases cited.

█ We have carefully reviewed the record. The information is sufficient to charge the crime of forgery. The evidence offered by the State is sufficient, if believed by the jury, to sustain the conviction. The instructions were fair, and no exceptions were taken thereto, and the defendant offered no additional instructions. The judgment and sentence is not excessive.

█ We have repeatedly held, and it is a well settled rule that we will not reverse a conviction for insufficiency of the evidence, if there is substantial evidence, although circumstantial from which a reasonable and logical inference of guilt arises. Billey v. State, Okl.Cr., 381 P.2d 160.

The record shows that the first attorney appointed to represent this defendant was permitted to withdraw, and on June 6, 1965 the court appointed the present attorney to represent the defendant at his trial to begin on June 9. This attorney filed and presented a motion for new trial, and perfected the appeal to this Court. He filed an excellent brief in behalf of the defendant, and appeared and ably argued the case before this Court.

No material error is apparent herein, and the judgment and sentence of the district court of Pittsburg County is therefore affirmed.

BUSSEY, P. J.; and NIX, J., concur.