SHERIFF, WASHOE COUNTY, NEVADA, Appellant, v. EDWARD LEROY SMITH, Respondent.

No. 7908

November 14, 1975                    542 P.2d 440

*Robert List,* Attorney General, Carson City; *Larry R. Hicks,* District Attorney, and *Kathleen M. Wall,* Assistant Chief Deputy District Attorney, Washoe County, for Appellant.

*H. Dale Murphy,* Public Defender, and *Michael R. Specchio,* Deputy Public Defender, Washoe County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Edward Leroy Smith is charged in a three-count indictment with two counts of first-degree murder in violation of NRS

200.030, subsection 2(a),[1] and with one count of capital murder in violation of NRS 200.030, subsection 1(e).[2] In a pretrial habeas proceeding, Smith challenged the constitutionality of the capital murder statute, seeking to have it declared void for vagueness. The district judge so ruled, and the State has appealed.

To be constitutional, a statute must be definite. Cramp v. Board of Pub. Instruction, 368 U.S. 278 (1961). Due process under the Fifth and Fourteenth Amendments requires strict application of this principle to penal statutes, for life, liberty, or property may not be placed in jeopardy by a statute which provides no warning or notice of the prohibited conduct. Winters v. New York, 333 U.S. 507 (1948). In assessing a statute's validity, however, the judiciary has long recognized a strong presumption that a statute duly enacted by the Legislature is constitutional. Maye v. Commonwealth, 189 S.E.2d 350, 351 (Va. 1972); In re King, 90 Cal.Rptr. 15, 23, 474 P.2d 983, 991 (1970); People v. Jones, 64 Cal.Rptr. 622, 624 (Cal.App. 1967); State v. Bailey, 236 P. 1053 (Ore. 1925). The inevitable tension between these principles has not been eased by the putative formulas or tests for vagueness that do little more than rephrase the principle of definiteness.[3] It is with both concepts in mind, then, that we analyze the Nevada legislative provisions defining capital murder as the killing of more than one person as the result of a "common plan, scheme or design".

The phrase "common plan, scheme or design" has acquired a common law usage that admits of two different interpretations. In its widely used sense, the phrase relates to evidence of uncharged crimes admissible during trial where one act,

---

[1]NRS 200.030, subsection 2(a):
"2.   Murder of the first degree is murder which is:
"(a) Perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing;"

[2]NRS 200.030, subsection 1(e), as amended, Stats. Nev. 1973, ch. 798, § 5, at 1803:
"1.   Capital murder is murder which is perpetrated by:
". . .
"(e) Killing more than one person as the result of a common plan, scheme or design."

[3]One such test focuses on whether a statute, by its terms, is so vague that men of common intelligence must speculate as to its meaning. Cramp v. Board of Pub. Instruction, *supra*.

plan, or scheme involves the commission of two or more crimes under circumstances that would make it impossible to prove one crime without proving all the crimes. Such was the definition accorded the phrase by this court in State v. Nester, 75 Nev. 41, 334 P.2d 524 (1959). In Nester, permitting evidence of another offense to show a common scheme or plan was carefully distinguished from a second evidentiary principle which admits evidence of a prior offense to prove identity, where specific features or "peculiarities" of a crime previously committed by the defendant serve as a kind of "trademark" when they appear in the subsequent crime. This latter sense is the second context in which the phrase "common plan or scheme" has been used: crimes committed under a similar *modus operandi* that tends to establish the identity of the perpetrator. See People v. Paxton, 62 Cal.Rptr. 770 (Cal.App. 1967).

Thus, the phrase "common plan or scheme" has acquired a common law usage in one context that means a single plan or scheme contemplating two or more offenses before the plan has been completed, and that means in another context the perpetration of two independent and unrelated offenses having a sufficient number of elements in common to make the commission of the first relevant to a determination of the identity of the perpetrator of the second. The issue before the court is whether the existence of these two different meanings makes NRS 200.030(1)(e) so vague as to render it unconstitutional. The district judge, in declaring NRS 200.030(1)(e) void for vagueness, ruled in part:

". . . One could . . . perpetrate two or more unrelated homicides, both without premeditation, deliberation and malice aforethought and be guilty of capital murder if he commits the murders in substantially the same way.[4] On the other hand, one could commit two unrelated homicides, with premeditation, deliberation, and malice aforethought in the most atrocious manner and not be vulnerable to a charge of capital murder if the two homicides were committed in dissimilar

---

[4]The suggestion that under NRS 200.030(1)(e) one could be guilty of capital murder for committing multiple homicides without malice aforethought is without merit, since the statute defines "capital murder" as *murder* perpetrated by killing more than one person as the result of a common plan, scheme, or design; and under NRS 200.010, "murder" is defined as the unlawful killing of a human being *with malice aforethought.*

ways. This Court does not believe the Legislature intended such arbitrary and irrational results." (Footnote added.)

A fundamental rule of statutory interpretation[5] is that the unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another that would produce a reasonable result.[6] Adoption of the district judge's independent-and-unrelated-offense interpretation of the statute would lead indeed to unreasonable results. It would ascribe to the Legislature a purpose to punish more severely one who murdered a series of victims in a characteristic manner than one who murdered a series of victims in an uncharacteristic manner. Additionally, with no rational basis for such a distinction, this interpretation would render NRS 200.030(1)(e) violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. As a corollary to the previously mentioned presumption favoring the constitutionality of legislation, the mere fact that one among alternative constructions of a statute would involve serious constitutional difficulties is reason to reject that interpretation in favor of another. In re King, *supra;* People v. Jones, *supra.* Further, the interpretation adopted by the trial court is inconsistent with the purpose of the statute as expressed by the Legislature in the preamble

---

[5]It has long been recognized that criminal and penal statutes are to be interpreted with the aid of all of the usual rules of statutory construction. While the rule of strict construction is an additional factor to be considered by courts in ascertaining the meaning of criminal statutes, it is still only one of several factors to be considered and is to be utilized in conjunction with the other rules of statutory construction. See People v. Breyer, 34 P.2d 1065, 1066 (Cal.App. 1934), where the court stated: "[T]he rules of construction applicable to civil statutes also apply to penal statutes . . ." See, also, State v. Ledkins, 303 P.2d 1099, 1101 (Utah 1956), where the court ruled: "[I]t is well established that the same basic rules apply to statutory construction of criminal and civil statutes." And compare 2 C. Sands, Statutes and Statutory Construction, § 44.19, at 366–367 (4th ed. 1973), where it is stated: "In keeping with the principle of statutory construction that criminal statutes are to be strictly construed against the state, penal statutes tend to be more often struck down for partial invalidity than purely civil enactments, even though the same rules of construction are followed for this purpose in dealing with both types of legislation." (Footnotes omitted.)

[6]For an application of this principle, see Cannon v. Taylor, 87 Nev. 285, 486 P.2d 493 (1971); Ex parte Davis, 63 P.2d 853 (Cal.App. 1936); Penrose v. Whitacre, 61 Nev. 440, 132 P.2d 609 (1942).

to NRS 200.030(1)(e). That purpose, as defined by the Legislature, is to establish a deterrent to particularly aggravated instances of criminal conduct. (Stats. Nev. 1973, ch. 798, at 1801.) The independent-offense interpretation of "common plan, scheme or design" ascribes to the Legislature a purpose to deter the mere existence of a *modus operandi,* rather than a single preconceived plan that contemplates multiple murder. The stated purpose of legislation is a factor considered by courts in interpreting a given statute. Lott v. State, 223 P.2d 147, 151 (Okla. 1950); United States v. Sullivan, 332 U.S. 689, 693–694 (1947); Board of School Trustees v. Bray, 60 Nev. 345, 109 P.2d 274 (1941). Finally, the Legislature has recently reenacted the statute, substituting the word "single" for the word "common" in the phrase "common plan, scheme or design". Stats. Nev. 1975, ch. 740, § 1, at 1580–1581.[7] Where a former statute is amended, or a doubtful interpretation of a former statute rendered certain by subsequent legislation, it has been held that such amendment is persuasive evidence of what the Legislature intended by the first statute. People v. Valentine, 169 P.2d 1 (Cal. 1946); Groves v. Meyers, 213 P.2d 483 (Wash. 1950).

On the other hand, the clear alternative to the interpretation by the district court presents none of these problems. A "single plan" involving several contemplated killings would be a particularly heinous crime, justifying a more severe deterrent and punishment than other killings not involving planned multiple-murder. Such a distinction would not be irrational, would be consistent with the stated legislative purpose, and would reflect the recent legislative clarification. Of the two alternative constructions, every canon of statutory interpretation mandates this approach. Most important to the instant case, such meaning fairly derives from the language of the statute. United States v. Brown, 333 U.S. 18, 25–26 (1948).

We conclude, therefore, that the single-plan interpretation does not do violence to the purposes sought to be implemented by the due process clause in voiding vague and ambiguous

---

[7]NRS 200.030(1)(e), as amended, Stats. Nev. 1975, ch. 740, § 1, at 1580–1581:

"1. Capital murder is murder which is perpetrated by:

". . .

"(e) Killing more than one person willfully, deliberately and with premeditation as the result of a single plan, scheme or design."

statutes, in that one who commits multiple murder according to a single preconceived plan may not argue that he is without notice that the statute applied to him; nor may he argue that the statute as thus interpreted would leave too great a potential for the unequal and discriminatory application of the law. For these reasons, we reverse the order of the court below declaring NRS 200.030(1)(e) unconstitutional, and we order that the respondent, Smith, be held to answer to the capital murder charge in district court.

ZENOFF and THOMPSON, JJ., concur.

GUNDERSON, C. J., and BATJER, J., concurring:

We assume that the only issue the majority have elected to decide in this case is the issue they have elected to discuss.

We therefore agree with what we understand to be the majority's ultimate conclusion: that NRS 200.030(1)(e), as originally adopted, should be construed only as encompassing "[k]illing more than one person as the result of a common [*single*] plan, scheme or design [*to kill*]." However, to arrive at this conclusion, we find it necessary only to notice that the foregoing seems the strictest available construction, and to consider that penal statutes must be strictly construed. Sheriff v. Hanks, 91 Nev. 57, 530 P.2d 1191 (1975); Sardis v. District Court, 85 Nev. 585, 460 P.2d 163 (1969).

Since we think that, strictly construed, the words employed by the legislature are quite intelligible, we have no difficulty agreeing that NRS 200.030(1)(e) is not unconstitutionally vague. We do so, however, without feeling constrained to refer to many of the cases and principles the majority apparently feel are significant to a determination of that issue.