419 So.2d 348 (1982)
FLORIDA PATIENT'S COMPENSATION FUND, Appellant,
v.
MERCY HOSPITAL, INC., a Florida Corporation, et al., Appellee.
No. 81-1575.
District Court of Appeal of Florida, Third District.
August 17, 1982.
Rehearing Denied October 8, 1982.
*349 Steel, Hector & Davis and Talbot D'Alemberte and Thomas R. Julin, Miami, for appellant.
Joe N. Unger, Adams, Ward, Hunter, Angones & Adams, Miami, for appellee.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
BASKIN, Judge.
While Wilmon Mosely was a patient at Mercy Hospital, he underwent a diagnostic procedure designed to determine whether he suffered from a blocked artery. As the catheter was pushed through an artery toward Mosely's heart, the tip broke. Removal of the tip required surgery. After his recovery, Mosely filed suit against the manufacturer, the hospital, the doctor, and the Florida Patient's Compensation Fund, alleging that he sustained injuries as a result of the surgery required to remove the tip. He demanded that punitive damages be assessed against the hospital. Following trial, the jury awarded Mosely compensatory damages from the doctor, the hospital, and the Florida Patient's Compensation Fund[1] and assessed $750,000 in punitive damages against Mercy Hospital.[2] Under the amended final judgment, the fund must pay the punitive damages awarded against Mercy Hospital.
The fund has appealed the punitive damage award, arguing that punitive damages are designed to punish and therefore should be borne by the tort-feasor hospital rather than by the fund. We are asked to decide whether the Florida Patient's Compensation Fund may be held liable for punitive damages resulting from the wrongful acts of a health care provider. We hold that the fund may not be assessed punitive damages incurred by a health care provider. Mercy Hospital must bear the cost.
The legislature established the Florida Patient's Compensation Fund in response to a problem that it described as reaching crisis proportions in Florida. The problem was, and continues to be, the cost of medical professional liability insurance for health care providers and doctors, a cost ultimately borne by the consumer. In enacting section 627.353, Florida Statutes (1975), transferred to section 768.54 by section 627.353, Florida Statutes (Supp. 1976), the Medical Malpractice Reform Act, the legislature protected patients and limited the financial liability of health care providers. Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077 (Fla. 3d DCA 1979), appeal dismissed, cert. denied, 383 So.2d 1198 (Fla. 1980).
According to section 768.54(3)(e)3, Florida Statutes (Supp. 1978):
A person who has recovered a final judgment or a settlement approved by the fund against a health care provider who is covered by the fund may file a claim with the fund to recover that portion of such judgment or settlement which is in excess of $100,000 or the amount of the health care provider's basic coverage, if greater... .
The Act requires members of the fund to pay a fee calculated according to risk factors and location. In addition, section 768.54(3)(c) provides:
If the fund determines that the amount of money in an account for a given fiscal *350 year is in excess of or not sufficient to satisfy the claims made against the account, the fund shall certify the amount of the projected excess or insufficiency to the Insurance Commissioner and request the Insurance Commissioner to levy an assessment against or refund to all the participants in the fund for that fiscal year, pro-rated, based on the number of days of participation during the year in question. The Insurance Commissioner shall order such refund to, or levy such assessment against, such participants in amounts that fairly reflect the classifications prescribed above and are sufficient to obtain the money necessary to meet all claims for said fiscal year.
When the fund is forced to pay a judgment which exceeds its reserves, the hospital may be assessed additional amounts. Members also receive refunds when a surplus exists.
Although the question of responsibility for punitive damages has not previously been decided with regard to the fund, private insurers have been ruled not liable for punitive damages. Nicholson v. American Fire & Casualty Insurance Co., 177 So.2d 52 (Fla. 2d DCA 1965). The rationale derives from the fact that punitive damages are imposed as punishment. Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962). The Florida Patient's Compensation Fund, technically, is not an insurer; it is a nonprofit fund designed for the benefit of the public. The fund is responsible to the legislature, which determines the amount of fees it may receive. The fund exercises no choice in the acceptance of a risk or of a member. Despite the differences between the fund and private insurers, no valid reason exists to deny fund members the same benefit that inures to private insurers  the avoidance of liability for punitive damages. McNulty; Perez v. Otero, 415 So.2d 101 (Fla. 3d DCA 1982); Nicholson. The assessment of punitive damages against the fund would force innocent fund members to share the punishment for the wrongful acts of a single member, a result we reject as a matter of public policy.
We find no problem with the award of punitive damages against Mercy Hospital, predicated upon its own wrongful conduct, Prosser, The Law of Torts, p. 12 (4th ed. 1971), although corporate responsibility based upon vicarious liability has been disapproved. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). Corporate status may not be used to shield a wrongdoer from punishment.
Turning to the question of the significance of chapter 82-263, Laws of Florida, amending section 768.54(2)(b), Florida Statutes (1981),[3] effective subsequent to the institution of these proceedings, we conclude that the amendment provides persuasive evidence of the legislative intent applicable to the original statute. Sheriff, Washoe County v. Smith, 91 Nev. 729, 542 P.2d 440 (1975). In State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529, 531 (Fla. 1973), the court observed:
When the Legislature reenacts a statute, it is presumed to know and adopt the construction placed thereon by the State tax administrators. The mere change of language does not necessarily indicate an intent to change the law for the intent may be to clarify what was doubtful and to safeguard against misapprehension as to existing law. The language of the amendment in 1971 was intended to make the statute correspond to what had previously been supposed or assumed to be the law. The circumstances here are such that the Legislature merely intended to clarify its original intention rather than change the law. It should be noted that this change was made before the case had arisen requiring a construction of the statute. (citations omitted).
*351 Our decision rests on a firm foundation: the preamble to the statute,[4] the purpose of the fund as expressed in its title,[5] the absence of decisions construing the law, and the fact that section 768.54 was subject to sunset review when reenacted.
[T]he time and circumstances surrounding the enactment of the amendment may indicate that the change wrought by the amendment was formal only  that the legislature intended merely to interpret the original act. If such is the case, the matter in the amendatory act may be looked to in order to determine what rights existed under the original act. (footnote omitted).
Sutherland Statutory Construction § 22.30 (Sands rev. 1972). The 1982 amendment clarifies, but does not change, the import of the original statute. It defines the legislative intent that punitive damages may not be made a fund obligation.
In the long run, whether the fund or the hospital is required to pay punitive damages, the ultimate burden will belong to the consumer in the form of increased costs. It is our expectation that, by requiring the health care provider to pay its own punitive damages, we will achieve the desired deterrent effect and that extra precautions will be taken to avoid punitive damage judgments.
For these reasons, we reverse the final judgment entered by the trial court only to the extent that it requires the fund to pay punitive damages awarded against Mercy Hospital. We remand the cause for the entry of an amended final judgment awarding punitive damages against Mercy Hospital.
Reversed and remanded with directions.
NOTES
[1] Prior to trial, Mosely settled his claim against the manufacturer. After trial, he negotiated settlements with other defendants.
[2] The jury found Dr. Castillo and Mercy Hospital guilty of negligence. It awarded $220,000 in compensatory damages against the doctor, the hospital, and the fund and assessed $750,000 in punitive damages against Mercy Hospital. In the amended final judgment, the trial court entered the $750,000 punitive damage award as an obligation of the fund.
[3] The amendment states:

The fund shall not be responsible for payment of punitive damages awarded for actual or direct negligence of the health care provider member. The health care provider shall have the same responsibility for punitive damages it would have if it were not a member of the fund.
[4] the cost of purchasing medical professional liability insurance for doctors and other health care providers has skyrocketed in the past few months; and
WHEREAS, it is not uncommon to find physicians in high-risk categories paying premiums in excess of $20,000 annually; and
WHEREAS, the consumer ultimately must bear the financial burdens created by the high cost of insurance; and
WHEREAS, without some legislative relief, doctors will be forced to curtail their practices, retire, or practice defensive medicine at increased cost to the citizens of Florida; and
WHEREAS, the problem has reached crisis proportion in Florida... .
Ch. 75-9, Laws of Fla.
[5] Florida Patient's Compensation Fund.