HUGHES PROPERTIES, INC., AND SUMMA CORPORATION, APPELLANTS, v. STATE OF NEVADA AND THE NEVADA GAMING COMMISSION, RESPONDENTS.

No. 14621

May 10, 1984                                                680 P.2d 970

*McDonald, Carano, Wilson, Bergin, Frankovich & Hicks,* Reno, for Appellants.

*Brian McKay,* Attorney General, and *Dennis Vincent Gallagher,* Deputy Attorney General, Gaming Division, Carson City, for Respondents.

## OPINION

*Per Curiam:*

This appeal is taken from a grant of summary judgment in favor of respondents, the State of Nevada and the Nevada Gaming Commission.

Appellants Hughes Properties, Inc. and Summa Corporation instituted this suit, seeking a refund of allegedly overpaid quarterly license fees. They argued that the plain meaning of former NRS 463.0114 (now 463.0161), defining "gross revenue," precluded taxation of sums received as "rake-offs" and percentage buy-ins. Appellants further sought to have Nevada Gaming Commission regulation 6.080(1)(d), which provides for the assessment of these sums, declared unconstitutional.[1] Respondents took the position that gross revenue included rake-offs and buy-ins. They defended regulation 6.080(1)(d) as a valid implementation of the legislative intent of NRS 463.370 to tax gaming revenue.

In cross motions for summary judgment, each side sought to have the lower court adopt its interpretation of the statute. The

---

[1]Regulation 6.080(1)(d) provides:

Gross revenue shall be computed in the following manner:
(d) Poker, pan and similar games—all sums received by the house as a percentage rake-off, a time buy-in, or other compensation charged by the house for the privilege of playing, and any and all sums won by any shill employed by the licensee.

court granted respondents' motion. We agree with the district court's interpretation of the statute and affirm the judgment.

There are two types of gambling games, banking games and percentage games. Examples of banking games are craps, roulette and twenty-one, where the casino wagers against the patron. Percentage games are poker, panguingui and similar games where patrons wager against each other and the house takes a percentage of each wager as a "rake-off."

NRS 463.370 requires the Gaming Commission to charge and collect quarterly license fees based on a percentage of the licensee's gross revenue. Gross revenue was defined during the relevant period by NRS 463.0114 as "the total of all sums received as winnings less only the total of all sums paid out as losses by a licensee. . . ." Regulation 6.080 generally provides the procedure for reporting winnings; subsection (1)(d) provides for the inclusion of sums received as rake-offs and buy-ins in the calculation of gross revenue.

Appellants' argument on appeal is the same as that made in the district court. It centers on the definition of the word "winnings" in NRS 463.0114. Appellants claim that in order to have a "winning" there must be a wager. They contend that since the house does not engage in a wager in order to collect its rake-off or buy-in fees, they cannot be characterized as "winnings."

The district court interpreted the term "winnings," consistent with respondents' position at trial, as a licensee's gains derived from the playing of gambling games. The court noted that there was not a great difference between rake-offs and buy-ins and the profits derived from other games since "the casino will just as surely win on slots, roulette and craps in the long run." It therefore construed the statute to provide for the inclusion of these sums in gross revenue and concluded that Regulation 6.080(1)(d) was valid.

As we have stated, we agree with the district court's conclusions. Although tax statutes are construed most strongly against the government and in favor of the taxpayer, State v. Pioneer Citizen's Bank of Nevada, 85 Nev. 395, 398, 456 P.2d 422, 423 (1969), the rule of strict construction is only one of several factors to be considered, and is to be utilized in conjunction with other rules of statutory construction. Sheriff v. Smith, 91 Nev. 729, 733, 542 P.2d 440, 443 (1975). It is the duty of this court to give effect to the clear intention of the Legislature and to construe the language of a statute so as to give it force and not nullify its manifest purpose. Woofter v. O'Donnell, 91 Nev. 756, 762, 542 P.2d 1396, 1400 (1975).

"A fundamental rule of statutory interpretation is that the unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another that would produce a reasonable result." Sheriff v. Smith, 91 Nev. at 733, 542 P.2d at 443. The state licenses gambling games primarily as a means of producing revenue. Yet, if appellants' construction of the statute were adopted, the state would be precluded from including the revenue produced by all percentage games in the calculation of a licensee's gross revenue. This would not be a reasonable interpretation of the statute, nor would it be consistent with the legislative intent. Appellants' reliance on Cashman Photo v. Nevada Gaming Commission, 91 Nev. 424, 538 P.2d 158 (1975), is misplaced. In *Cashman* the legislative intent to forego taxation of photographic services was made obvious by the Legislature's omission of any reference to "services" in the statute when it borrowed the remainder of the language from the Federal Cabaret Act. In the instant case, the word "winnings" appears in the statute and must be interpreted in a manner consistent with the obvious legislative intention to tax the proceeds of gambling games.

It follows that we consider Regulation 6.080(1)(d) a valid implementing regulation consistent with the Gaming Control Act and the legislative intent behind that act. It is noteworthy that Regulation 6.080(1)(d) had included rake-offs and buy-ins as elements of gross revenue since its effective date of July 1, 1974. "Where, as here, the legislature has had ample time to amend an administrative agency's reasonable interpretation of a statute, but fails to do so, such acquiescence indicates the interpretation is consistent with legislative intent." Summa Corporation v. State Gaming Control Board, 98 Nev. 390, 392, 649 P.2d 1363 (1982). We also note that when the Legislature did amend NRS 463.0114 in 1981, it specifically included rake-offs and buy-ins in the definition of gross revenue, consistent with Regulation 6.080(1)(d). *See* NRS 463.0161. "Where a former statute is amended or a doubtful interpretation of a former statute rendered certain by subsequent legislation, it has been held that such amendment is persuasive evidence of what the Legislature intended by the first statute." Sheriff v. Smith, 91 Nev. 729, 734, 542 P.2d 440, 443 (1975).

We must also disagree with appellants' contention that the district court's grant of summary judgment was premature because the question of the parties' mutual understanding of

the meaning of the statute had not been resolved. No material issue of fact remains to be determined in this case. The parties' questionable understanding of the statute is not material to the legal issue of the statute's construction. The sole issue before the court was the construction of a statute and the validity of a regulation implementing that statute. We are satisfied that the court's interpretation of the statute was both logical and consistent with the legislative intent.

The judgment is affirmed.