CHARLES EDWARD NESTER, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 4083

January 20, 1959                     334 P.2d 524

(Petition for rehearing denied February 16, 1959.)

*John F. Mendoza,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General and *George M. Dickerson,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, McNamee, J.:

Appellant was convicted of the rape of Rachel Cruz. Appeal is taken from the judgment and from the order denying his motion for a new trial.

The chief assignment of error as grounds for reversal involves evidence of a separate crime committed on the person of Edna Weldon.

In North Las Vegas, on August 25, 1956 shortly after 1 a. m. Rachel Cruz, who had gone to bed, sensed someone in her bedroom. She rolled over on her left side; a man jumped on top of her saying, "never mind who it is," and then threw some rags over her face so she wouldn't be able to see him. She struggled, screamed, bit the inside of his little or ring finger, breaking the skin thereof. She was struck in the face, and finally quit struggling when her assailant said, "shut up or I'll knock you out." When she pushed the rags from her face he slid down burying his head against her shoulder. In this position he was able to complete forcibly the act of sexual intercourse without removing any of her garments (she was wearing a nightgown and "panties") and without removing any of his clothing. She was able to see the rear portion of his head, feel his hair, which was fine, and determine that he was colored.

After accomplishing the act, the assailant picked up his light-weight shoe or slipper of "awfully soft texture"

and ran out of the house through the back door. The victim tried to turn on the lights and was unsuccessful, because the fuses in the fuse box beside the back door had been unscrewed to preclude contact, after she had retired for the night.

Footprints from a house-slipper type of shoe led from the back door of the Cruz house 300 yards to a house occupied by appellant, who, when confronted there by police about an hour and a half after the rape, was bearing a weeping wound on the inside of his left hand's ring finger, and a weeping scratch or abrasion at the quick of the fingernail of said finger. He was taken to the Cruz home, where Mrs. Cruz identified him as her assailant by his voice, his color, as well as by his build, stature, and hair.

The doctor's examination of Mrs. Cruz at the hospital on the same day disclosed numerous contusions on her face, arms, upper chest, right thigh, and a tenderness of the abdomen. A vaginal smear taken from deep penetration indicated presence of the sperm from sexual intercourse.

One Barbara Jean Williams testified that during September, 1956, in the presence of appellant's ex-wife, appellant admitted he had committed the North Las Vegas rape.

On February 16, 1957 at about 7:30 p. m. and at a time appellant was not in custody, one Edna Weldon left her apartment at 4779 East Owens Street, North Las Vegas, to get into her automobile. She occupied Apartment B at said address. Appellant and his wife about five months before had occupied Apartment G of the same address, which was about 100 feet from Apartment B. As she left the apartment, the light immediately outside her door, as well as the floodlight on a pole in the courtyard, against which there was a ladder, were both out, and the area was in darkness. After she entered her car and drove down the street one block, a man rose up out of the back seat and put his hands on her shoulders. He was wearing a sweater and possibly gloves which concealed his face and hands. He told her to keep driving and she was directed to stop on a side road. He climbed

over into the front seat where a struggle ensued. He then told her to "shut up or I'll knock you cold." Without any attempt at caressing her or removing any of his or her garments, he attempted several times to enter her vagina with his penis, but she was too small for such penetration. He then forcibly inserted his penis into her rectum. While he was holding her down he lost his balance and his right hand protruded from the sweater sleeve and fell against the dashboard of her car leaving a palm print, and she observed his hand to be that of a colored man. He told her he lived in the neighborhood and had been watching her for a long time. After he left her, she returned to her apartment, the police arrived, and the two lights were twisted into their sockets and upon contact illuminated the area. The palm print taken from the dashboard of Mrs. Weldon's vehicle was found to be identical with that of appellant's. Later Mrs. Weldon identified her assailant by the sound of his voice but made no physical identification of him.

Appellant, testifying in his own behalf, stated that he was at home in bed with his wife at the time of the rape of Rachel Cruz, which testimony his wife corroborated. He testified that the injuries to his finger happened at work several hours before the rape, while he was lifting wooden crates, around one of which was a cut metal band, and this was corroborated in part by a co-worker who witnessed the accident but did not see the injured finger. Appellant's wife testified her husband complained of an injured finger when she met him the evening before the rape, but she didn't see the finger. Appellant denied making any admission to Barbara Williams that he was involved in a North Las Vegas rape, and this testimony was corroborated by his ex-wife. With respect to the incident of February 16, 1957, he stated that on said day he drove his wife's car on U. S. Highway 91, through Yermo, California, to the home of his former sister-in-law in Los Angeles, California, and that he was present in Los Angeles at the time of the attack on Mrs. Weldon. The sister-in-law corroborated his presence in Los Angeles at that time, but the officer in charge of the Yermo checking station through which every vehicle

entering California on U. S. Highway 91 must stop and be recorded, testified on rebuttal there was no record of that particular car on that date passing through said station. To account for his palm print being on the dashboard of Mrs. Weldon's car, appellant contended that he worked at a service station near Mrs. Weldon's residence and dusted the inside of cars. Mrs. Weldon testified, however, that her car was serviced elsewhere.

The other evidence in the record does not affect materially the court's conclusions.

Appellant does not dispute the fact that Rachel Cruz was feloniously raped in Clark County, on August 25, 1956. The conflicting evidence relates solely to the identity of her assailant. The information charges the defendant with being the guilty person and evidence supporting this charge was corroborated by evidence tending to show him as the assailant in the felonious attack upon Edna Weldon some six months later. This corroborating evidence was met with timely objections.

Did the trial court err in admitting evidence purporting to show that appellant committed this other independent crime?

It is a rule of criminal evidence that, on the trial of a person accused of crime, proof of a distinct independent offense is inadmissible.

As exceptions to this general rule evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with commission of the crime on trial.

Although Nevada recognizes the general rule and said exceptions (State v. McFarlin, 41 Nev. 486, 494, 172 P. 371, 373), the fact that it is much easier for a jury to believe the defendant guilty of the crime charged when it is known or suspected that he has committed a separate and distinct crime, shows the danger of allowing evidence of the other crime.

"Such evidence compels the defendant to meet charges of which the indictment gives him no information,[1] confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it, and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him." People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 294, 62 L.R.A. 193.

Consequently the relevance of evidence which tends to prove a crime other than that charged must be examined with care, even if it fits properly, within one or more of the exceptions.

We are not here concerned with the assailant's motive or intent, or of the presence or absence of mistake or accident. All of the elements of the crime of rape were proven without dispute, and were not in issue, and there is no contention to the contrary.

A brief analysis of the fourth exception relative to a common scheme or plan, is deemed necessary, because there appears both in the briefs and the oral argument some confusion with respect to its applicability to the facts in this case.

"A common scheme or plan" here means that one act or one plan or scheme might involve the commission of two or more crimes under circumstances that would make it impossible to prove one without proving all. 20 Am.Jur. 296.

"The test is not whether the other offense has certain elements in common with the crime charged, but whether it tends to establish a preconceived plan which resulted in the commission of that crime." Wigmore on Evidence, 2d ed. sec. 300.

The criminal attacks against Rachel Cruz and Edna Weldon were not part of the same purpose, scheme or plan, but were two different schemes wholly independent of each other (although the plan or scheme or modus

---

[1] In the present case Mrs. Weldon's name was indorsed on the information, apprising the defendant that she would be called as a witness.

operandi were similar in many respects), and each could have been proven without evidence of the other.

Therefore to justify, if at all, the admission in evidence of the attack upon Edna Weldon, it must fall within the fifth exception to the general rule, which allows evidence of another crime to be considered when it tends to establish the identity of the person charged with the commission of the crime for which defendant is being tried.

It is the state's contention that the two crimes were similar in so many respects that there could be no reasonable doubt but that they were committed by the same person, and when the state is referring to the two crimes as showing a common plan or scheme, it does so not for the purpose of utilizing the fourth exception of the general rule, which is not applicable as heretofore stated, but solely to identify the assailant in the Rachel Cruz case.

In the case at bar the state contends the two criminal acts were similar in the following respects: 1. The assailant in each case had a soft quality of voice and a southern accent. 2. In both cases the home in which the victim lived or had lived was in close proximity to the assailant, if the appellant was the assailant. 3. Both crimes occurred in North Las Vegas. 4. In both cases the fuses or lights had been unscrewed to keep the area in darkness. 5. In both instances the assailant concealed his face to prevent identification. 6. The language used by the assailant was practically identical—"shut up or I'll knock you out," in one case, and "shut up or I'll knock you cold" in the other. 7. In neither case was there an attempt to embrace the victim but rather a forcible entry in the vagina in the one case, and in the rectum when entry in the vagina was practically impossible in the other case. 8. In both cases there was no removal of the garments either of the victim or the assailant.

As to the first three listed similarities, in no respect can they be said to render relevant the fact that another offense had been committed, because such matters could be proven without reference to other crimes.

Here we are faced with an attempt to establish identity by characteristic conduct. What is significant is that both this defendant and the assailant whom we seek to identify, when faced with a certain situation, are known in certain respects to have behaved in an identical manner. By these characteristics of conduct, established as peculiar to the defendant, it was proper for the state to seek to identify the assailant as the defendant.

Whether these elements of characteristic conduct are sufficient to make relevant the evidence relating to the Weldon crime is a question of law. People v. Molineux, supra. As stated in People v. Sharp, 107 N.Y. 427, 467, 14 N.E. 319, 344, "Whether the evidence in any particular case comes within the well-known exceptions to the general rule is often the difficult question to solve and not as to what the rule itself really is."

California has departed from the restrictions governing the application of restrictions to the general rule as defined in the Molineux case, and has liberalized those restrictions in favor of admissibility. "In recent years these exceptions have been so extended that the rule appears to have been the exception, and the exceptions the rule." People v. Cassandras, 83 Cal.App.2d 272, 188 P.2d 546, 550.

The rule in California is that "except when it shows merely criminal disposition, * * * evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: * * * does it tend logically, naturally, and by reasonable inference to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not. * * * and the fact that it may tend to prejudice the defendant in the minds of the jurors, is no ground for its exclusion.' "

People v. Peete, 28 Cal.2d 306, 316, 169 P.2d 924, 929.

In the Peete case, 24 years elapsed between the two crimes. Evidence of the former crime was admitted as relevant to identify the defendant as the murderer, since the two crimes showed a similar modus operandi, and the court held also that the motive was the same for the two crimes.

In People v. Webster, 79 Cal.App.2d 321, 179 P.2d 633, 636, the prosecution had to rely wholly on circumstantial evidence, and notwithstanding the strictly circumstantial nature of the case and the gravity of the offense (murder), evidence of a similar attack subsequent to the one on trial, was held admissible.

"The evidence before us concerning both offenses involved here is sufficient to satisfy the requirements of these rules. Defendant was sufficiently connected with and implicated in the offense for which he was on trial. It was thoroughly established that he spent the afternoon and evening of June 30th with deceased; that he had dinner with her is established by the testimony of the waitress who served them and the remnants of this meal found in her stomach by the autopsy surgeon. The tire track on the road corresponded with the tread of one of the tires on his automobile. Most convincing is the fingerprint found on the purse of deceased. That defendant was concerned in the assault on Miss Sullivan was sufficiently established by her identification of him as her assailant. There was a similar plan or scheme or system appearing in both offenses. Defendant 'picked up' both women in cocktail bars and spent considerable time drinking with them. Both women had bruises and abrasions on their heads. Both women were cruelly choked evidently with the right hand of their attacker—one to death and the other into a state of collapse and unconsciousness. The garments of both were torn open leaving the upper portion of the front of the torso exposed. It would be unusual to find two crimes with greater details of similarity of execution, showing a common plan or scheme or system in the commission of both. Thus the evidence of the collateral crime was properly admitted. People v. Lisenba, 14 Cal.2d 403, 94 P.2d 569; People

v. Peete, 28 Cal.2d 306, 169 P.2d 924; Lisenba v. People, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166. That the collateral crime was committed after the commission of the offense for which defendant was on trial does not in itself furnish sufficient reason for rejection of the evidence concerning it. People v. Gosden, 6 Cal.2d 14, 56 P.2d 211."

In People v. Cassandras, supra, there was no question of the identity of the defendant in either instance. The question was whether the crime of rape had been committed. The court said:

"But where the prior rape or attempt is committed under circumstances remarkably similar to the one charged the evidence is admissible to show a plan or scheme to commit the crime in that fashion, even though the prior rape or attempt was committed on a person other than the prosecutrix. In such cases the evidence that defendant committed the prior offense tends to prove that he committed the offense charged."

People v. Sullivan, 96 Cal.App.2d 742, 216 P.2d 558 approves the foregoing cases and holds that even when identity is not in issue evidence of another crime is admissible for the limited purpose of tending to show that there existed in the mind of the defendant a plan, scheme, system or design into which fitted the commission of the offense for which defendant was tried.

The California rule, supra, is apparently the common law rule which is stated as follows: Other acts must be excluded because of the prejudice, confusion, and surprise their use would create, subject to the all important reservation that if the other acts are relevant to guilt of the crime charged, otherwise than merely through propensity, then those other acts might like any other relevant facts be exposed. 51 Harv. L. Rev. 1033-4.

The rule that evidence of another crime is admissible when it is relevant to establish the identity of the defendant is, in addition to the California cases, supported by the following: Johnson v. State, 242 Ala. 278, 5 So.2d 632, (and cases there cited); Watts v. State, 229 Ind. 80, 95 N.E.2d 570; Melton v. State, 184 Ga. 343, 191 S.E.2d 91; Mosley v. State, 211 Ga. 611, 87 S.E.2d 314, (here

both victims of the rape testified that their assailant had a soft voice) ; Allen v. State, 201 Ga. 391, 40 S.E. 2d 144; Andrews v. State, 196 Ga. 84, 26 S.E. 2d 263; Merritt v. State, 168 Ga. 753, 149 S.E. 46; Talley v. State, 160 Fla. 593, 36 So. 2d 201; 20 Am.Jur. 292, sec. 312; 22 C.J.S. Criminal Law, sec. 684, p. 1097.

The leading case cited by appellant in support of his contention of error is the case of Lovely v. U. S. 169 Fed. 2d 386. A careful reading of this case shows that it is in accord with the California rule which excludes evidence of another crime where it has no relevance except to show criminal disposition.

"It is well settled that such evidence is not admissible where it has no relevance or probative value except in so far as it may show a tendency or likelihood on the part of the accused to commit the crime."

In the Lovely case there was no issue of identity, accused having admitted sexual intercourse with the prosecutrix. The only question was whether such act was done forcibly and against her will. The court did say, however, that such evidence of another crime may be relevant on such matter of identity where this is in issue.

In Harris v. State, 189 Tenn. 635, 227 S.W.2d 8, 10, cited by appellant, where the sole question was the identity of the accused, the court held that proof of the crime was insufficient to establish "some peculiarity of plan or method common to the two offenses.

"* * * to render relevant evidence of a crime for which a defendant is not being tried, its purpose and effect must be to show something more than the fact that the defendant is the kind of person who would not scruple to commit the kind of offense for which he is on trial. * * *

"Thus we are brought to the point of considering, in the present case, whether the similarity of the two crimes, which separate witnesses testified the defendant had committed, were so similar in their circumstances as to warrant the reception of proof of one as relevant to prove the other. In this case the crimes were a week apart in time. They were both rapes and both were

committed by coercion. In each instance the witness thought that a knife had been used although neither was able to say that she had seen the knife. The two crimes were not committed at the same place. The methods pursued were not so peculiar as to render it unlikely that lustful men bent upon the crime of rape might not have pursued identical methods. * * * Since the whole case turns upon the identity, the rule under which proof of similar crimes is admitted should not be too narrowly construed, but the trouble here is that even under a liberal construction the fact that the defendant committed one of the crimes sheds little light on the question of whether he committed the other."

The other cases cited by appellant are not cases where identity was in issue.

From a comparison of the Harris case, supra, with the other cases herein cited, there can hardly be doubt that the evidence of the Weldon attack is relevant and competent. Experience demonstrates that peculiarities of conduct can, in a proper case, be as valid and dependable a basis for identity as is reliance upon the perhaps frail senses and memory of a witness.

In Whiteman v. State, 119 Ohio St. 285, 164 N.E. 51, 54, 63 A.L.R. 595, the court in referring to evidence of other crimes, stated:

"It was the province of the court to determine whether the testimony was legally relevant; that is to say, whether under the circumstances of the case it would be essentially misleading or too remote. Having determined that it was legally relevant, it was for the jury to determine its probative value. While it was primarily a question of identity, that being the only issue, the trial court rules that evidence tending to show plan, method, or system would be relevant to the question of identity, these defendants having also been identified as the persons who committed the other offenses. The question is one of induction, and the larger the number of consistent facts the more complete the induction. It was for the court to determine that there was some relation between the system followed in the offense

charged in the indictment and the systems pursued in the other offenses, and it was for the jury to determine whether there was a sufficiently large number of consistent facts to establish the identity beyond a reasonable doubt. We find no error in the record."

Since it is the prejudicial nature of the evidence which is the principal concern, the question of admissibility does not turn entirely on its relevance or competence. The matter of a fair trial must also be considered.

In order to establish admissibility, then, it is not enough to establish that the evidence of a separate offense is relevant and competent under one of the exceptions to the general rule excluding such evidence. Even where relevancy under an exception to the general rule may be found, fair trial demands that the evidence not be admitted in cases where, by virtue of its prejudicial nature, it is more likely to distract from the essential issue than to bear upon it.

Whether, under the circumstances, admission of the evidence interferes with fair trial, can hardly be determined by fixed rule of law. It would seem to require, instead, the exercise of judicial discretion of the trial judge.

Gears v. State, 203 Ind. 380, 180 N.E. 585, at page 587, cites the Whiteman case, supra, with approval and then says (p. 587), "The admissibility of the evidence relating to other offenses presents a question for the sound discretion of the trial court guided only by very general standards or tests.

In all such cases as this, then, an intermediate step must be taken between the determination of relevancy by the court and the weighing of the evidence by the jury. In determining admissibility the additional responsibility rests upon the trial judge (after having determined that the evidence of a separate offense is competent and relevant) to balance the prejudicial and distracting impact of the evidence against its probative weight and persuasiveness. If by the balance struck,

prejudice outweighs probative value, the evidence should be excluded regardless of its relevancy to the issue of identity.

Stone, "Exclusion of Similar Fact Evidence," 46 Harvard L. Rev. 954, 984 states:

"The trial judge should be recognized to have a discretion to decide whether the probative weight of the proffered evidence outweighs its mere prejudice. Just as he can say whether there is sufficient evidence to go to the jury, he should be allowed to say, not as a matter of applying rules of admissibility, but as a matter of real discretion, whether it is the peg of relevance or the dirty linen hung thereon, upon which the jury is going to concentrate; and if in his opinion, the peg is so small and the linen so bulky and dirty that a jury will never see the peg, but merely yield to indignation at that dirt, then he should be allowed to exclude it. Appellate courts should hesitate to establish rules fettering the discretion of the tribunal which really has the situation before it. * * * And, if this discretion were to be combined with the practice of hearing argument in the judge's chambers, or out of hearing of the jury, it would produce a reasonable solution of the difficulties affecting this class of evidence."

Here the trial judge heard the substance of the other crime outside the presence of the jury. He determined as a matter of law that the same was relevant, legally admissible, and had sufficient weight to entitle it to be submitted to the jury, even though its nature would make it prejudicial under different circumstances. While we are not willing to agree that all of the said elements of contended similarities are of material or of any significance, we do believe that there was sufficient evidence of similar characteristics of conduct between the assailant in each instance when faced with a like situation, to identify them as one and the same person. Nor can we say that the balance struck by the trial judge between prejudice and probative weight was manifestly

wrong. Further, the jury was instructed as to the limited purpose for which such evidence was admitted, and appellant made no objection to the instruction so given.

The second assignment of error that "The District Court erred in allowing the state to examine witness Doyle Hamilton in such a manner that evidence which tended to show defendant may have been guilty of other and distinct crimes was brought before the jury" is without merit. We do not deem it necessary to quote the individual questions asked in rebuttal which form the basis of this objection, because in our opinion they refer only to the two crimes which were already in evidence and witness Hamilton testified that appellant denied knowledge of them.

As a third assignment of error, appellant contends that the district court erred in denying defendant's motion for a mistrial made immediately after the district attorney in the cross-examination of appellant, remarked, "are you sure that you didn't get those scars over the back seat of a car?" Counsel for appellant objected and moved for a mistrial on the ground that this was prejudicial in that the state was "trying to bring up something that there is absolutely no testimony about." We think this proper cross-examination in view of appellant's testimony that the scars resulted from being kicked in the shins by officer Hamilton, which was denied by Hamilton on rebuttal, and that of Mrs. Weldon who testified her assailant had climbed over the back seat to the front seat to attack her.

The fourth assignment of error was the court's refusal to give the following instruction proposed by appellant: "If the evidence in this case is susceptible to two constructions or interpretations, each of which appears to you to be reasonable and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt." This is a

modification of the instruction given in the case of State v. Carey, 34 Nev. 309, 122 Pac. 868, and which was also given here as instruction 4.[2]

In the present case we are not concerned with motives but with an alibi. Instruction No. 12 being the statutory instruction, defining reasonable doubt, and instruction No. 6 with reference to alibi, adequately protected appellant in his interpretation of the evidence.[3]

The fifth assignment of error pertains to the court's refusal to strike statements made by the district attorney in final argument. Appellant's motion to strike the following portions of said argument was denied:

"This is the state's case, and just as Mr. Mendoza tells you he has a duty to his client to seek his freedom, I have a duty to my client to seek freedom also, and freedom also from a horrible fear that must strike in the heart of a woman like Rachel Cruz upon seeing the presence of a man in her bedroom, to deprive her of that which has been reserved by her marriage oath that she took with her husband. Think of the impression that must be indelibly imprinted on the mind of a woman such as that for the remainder of her life of the abhorrent vulgarness. How it will affect her from this date forward. And as a woman of Clark County, she, the mother of children is to be free in her home, not to be molested by a man who, in my opinion, has sunk to the bottom   *   *   *."

---

[2]Instruction No. 4. "The jury were instructed that when a man's conduct may be consistently and as reasonably from the evidence, referred to two motives, one criminal and the other innocent, it is your duty to presume that such is activated by the innocent motive and not by the criminal."

[3]Instruction No. 12. "A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation."

Instruction No. 6. "When one who was not at the place where a crime was committed at the time of its commission is later charged with having been present and having committed or taken part in committing such crime, his absence from the scene of the crime, if proved, is a complete defense that we call an alibi."

The district attorney then went on to say without further objection:

"* * * by a man who, I say, in my opinion, has sunk to the bottom of a bottomless pit, the whole bottom of a pit of moral degradation. You have heard a tale revolting in the extreme and that shockingly illustrates the perverseness to which human nature can descend and you are now charged with the responsibility of stating what the attitude of Clark County shall be, what standard of obedience to our laws shall be maintained, because you alone sit in determination of that because our system of jurisprudence is composed of three indistinguishable cogs intermeshed, the law enforcement agencies that feed the evidence to the prosecution, the prosecution that screens the evidence through the legal safeguards to the jury, and the jury who dispenses the justice. It is an intermeshed working mechanism and the effectiveness of crime suppression is only as good as the twelve people who sit in judgment of each given case and when you cast your verdict it does not only reflect your individual thinking in this regard because you have been meticulously chosen and screened by the questions propounded to you as to your fitness to sit in this case, to speak out for and on behalf of the citizenry of Clark County, and the law is but words in a book, it is meaningless unless the agency in whom the power has been reposed to give meaning to that, assumes and undertakes the function and obligations which is theirs, and that is what I charge you with, ladies and gentlemen, at this time. Consider, weigh this evidence long and well and apply it to the law that His Honor has given to you and in so doing I am confident that you will bring forth the verdict that will do exact and equal justice to the State of Nevada as well as the defendant at the bar. Thank you."

In our opinion the district attorney stated in an abstract manner no more than was disclosed by the evidence, and he cautioned the jury "to consider, weigh this evidence long and well and apply it to the law that His

Honor has given to you, and in so doing this I am confident that you will bring forth the verdict that will do equal justice to the State of Nevada, as well as to the defendant at the bar."

There is no merit in appellant's fifth assignment of error.

The sixth and last assignment of error relates to the denial of the motion for a new trial. This motion was based on the first five assignments of error. In view of our conclusions relating thereto, the trial court did not err in denying said motion.

The court is of the opinion that there is ample competent evidence to justify the verdict, and there being no error, the judgment and order denying new trial are affirmed.

MERRILL, C. J., and BADT, J., concur.