Argued January 20, affirmed May 6, petition for rehearing denied
June 8, petition for review denied July 14, 1971

## STATE OF OREGON, *Respondent, v.*
## WILLIAM OLEN GAIRSON, *Appellant.*

484 P2d 854

Ken C. Hadley, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

In 1960 defendant was convicted by a jury of second degree murder of an 11-month-old infant. In November 1969 this court authorized defendant to file a belated notice of appeal.

On appeal, defendant contends that the trial

court erred (1) in allowing into evidence statements made by him to police when he had not been warned of his right to remain silent and his right to counsel; (2) in not granting a mistrial because of alleged improper arguments made by the prosecution; and (3) in instructing the jury concerning the lesser offense of manslaughter.

On December 17, 1960, defendant and Ethel Bursik, with whom defendant was cohabiting, brought Gary Bursik, a baby, to Dr. Pearson, an osteopathic physician, at his office in Malin, Oregon. The baby was dead and defendant said he had been playing with the baby and dropped it down a flight of stairs. Ethel Bursik gave an identical account of the incident. Both repeated this version of the child's death to police on two occasions shortly thereafter.

Subsequently, Ethel Bursik told law enforcement authorities that defendant had beaten the child to death on December 17 by repeatedly banging its head on the kitchen floor after it had apparently bitten his finger. She repeated this subsequent version of the incident at defendant's trial and testified that defendant had beaten the baby at various times in December with his hands, a strap and a whip. She testified further that defendant had told her, on one occasion, that he was liable to kill the baby and her other children if she did not take them to her mother's home, and that he had threatened to kill the baby the day before the child died.

The pathologist who performed the autopsy testified that the cause of the baby's death was "subarachnoid and subdural hemorrhage, and cerebral edema" as a result of force applied to the back of its head. He also testified that he had found a skull fracture and many contusions and abrasions on the body, some very

deep. He pointed out that some contusions were of recent origin while others dated back possibly as far as three weeks or more before death. At trial defendant disavowed his earlier version of the incident and averred that the fatal injuries must have occurred while he was away from the family home. He testified that Mrs. Bursik had apparently dropped the baby in his absence and had asked him to say he dropped it. He denied striking the infant at any time and offered no explanation of the presence of the numerous contusions and abrasions on the child's body.

A Mr. Clay Walker testified that defendant had come to him on December 17 and asked him to take care of one of his cars, because he wanted to get out of the country.

Defendant was interrogated three times, but was never told he had a right to remain silent and a right to assistance of counsel. While defendant concedes that the first two questioning sessions were merely investigatory, he argues that statements made by him at the third session, held at state police headquarters, should not have been admitted in evidence at his trial, because he was a focal suspect by the time the third interrogation was held and he was not given the warnings regarding his constitutional rights as subsequently required by *Escobedo v. Illinois*, 378 US 478, 84 S Ct 1758, 12 L Ed2d 977 (1964), and *State v. Neely*, 239 Or 487, 395 P2d 557, 398 P2d 482 (1965).

On appeal defendant urges that *Escobedo* and *Neely* should be given retroactive operation here under *Guse v. Gladden*, 243 Or 406, 414 P2d 317 (1966), and similarly decided Oregon cases.

■ However, this question has since been decided adversely to defendant's contention in *State v. Evans*,

258 Or 437, 483 P2d 1300 (1971), wherein, following the post-*Escobedo* decision of the United States Supreme Court in *Johnson v. New Jersey,* 384 US 719, 86 S Ct 1772, 16 L Ed2d 882 (1966), our Supreme Court reversed its prior holdings in *Guse v. Gladden,* supra, as well as *Elliott v. Gladden,* 244 Or 134, 411 P2d 287, *cert denied* 384 US 1020, 86 S Ct 1982, 16 L Ed2d 1043 (1966), and *Haynes v. Cupp,* 253 Or 566, 456 P2d 490 (1969). The Oregon court said in *Evans*:

> "* * * The rule is that in *Escobedo-Neely* and *Miranda* cases they are nonretroactive and the decisions in *Escobedo* and *Miranda* apply only to cases in which trial began after the decision in such a case was announced * * *." *State v. Evans,* 258 Or 437, 442, 483 P2d 1300, 1302 (1971).

Defendant's trial began before the *Escobedo* and *Neely* cases were decided; therefore the rules in these cases do not apply to defendant's statements. As no contention was made in defendant's 1960 trial that defendant's admissions to the police were involuntary, and as no such contentions were made in this appeal, we decide that defendant's admissions were properly allowed into evidence.

Defendant next contends that a mistrial should have been granted because of misconduct on the part of the prosecutor. In concluding his summation the deputy district attorney referred to the defendant as a "vicious murderous pig." Further, the special prosecutor in his summation stated that he had "volunteered"[①] to prosecute the case and emphasized certain portions of his summation by using words to the effect of "I believe" or "I think," expressing his personal

---

[①] The record does not disclose under what authority the special prosecutor was appointed or appeared for the state in the case.

belief and conviction as to (1) the professional competence of the pathologist, (2) the credibility of the testimony of state's chief witness, Mrs. Bursik, and (3) the guilt of defendant.

■■ Control over counsel's argument is largely entrusted to the discretion of the trial court. *State v. Gill*, 3 Or App 488, 474 P2d 23, Sup Ct *review denied* (1970). Improper remarks of counsel may be grounds for reversal, even if not objected to, if real prejudice results to a defendant from such remarks. But where no objection is made, they usually are not grounds for ordering a new trial. *State v. Miller*, 1 Or App 460, 460 P2d 874, 876 (1969), Sup Ct *review denied* (1970). This is especially so when the evidence appears to strongly indicate guilt on the part of the defendant. *State v. Miller*, supra.

■ In the case at bar, no objections were made to any of the above remarks, with the exception of the remark of the special prosecutor concerning his volunteering to prosecute the case. This objection was sustained. No motions for mistrial were made. In the light of the strong evidence of guilt provided by the record, we decide that, while several of the above remarks were improper, none was sufficiently hurtful to warrant ordering a new trial.

■ Defendant's final assignment of error challenges the following instruction to the jury concerning the lesser offense of manslaughter:

"Your attention has also been called to the fact that Manslaughter is a crime of lesser degree included in the crime charged. Manslaughter is defined by our law as follows:

" 'Any person who, without malice, express or implied, without deliberation, and upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion ir-

resistible, voluntarily kills another, is guilty of Manslaughter.'

You will note the difference between Manslaughter as just defined and Murder in the Second Degree. In Murder in the Second Degree, malice must exist, while in Manslaughter, as defined in this section of our law, there is no malice. There must be actually no malice whatever, and no deliberation or premeditation, but the homicide or killing must be committed voluntarily upon a sudden heat of passion caused, as I have stated and as the law requires, by a provocation apparently sufficient to make the passion irresistible.

"In order to establish the crime of Manslaughter as defined in this section of our law, it is necessary for the State to establish and prove beyond a reasonable doubt all of the material elements of the crime of Manslaughter. The material elements of the crime of Manslaughter are as follows: That the defendant, William Olen Gairson, killed one Gary Lee Bursik; that this killing was done upon a sudden heat of passion, caused by provocation apparently sufficient to make the passion irresistible; and that the crime, if committed at all, was committed in Klamath County, State of Oregon, on or about the date mentioned in the indictment, and prior to January 22, 1960.

"The burden of proof rests upon the State in this case to establish beyond a reasonable doubt the truth of every material allegation of the indictment, and the material elements of the crime charged, or the material elements of any lesser degree of homicide. I have specified and called to your attention those material allegations and the material elements of the lesser degrees of homicide. This burden does not shift during the trial, but rests upon the State to the close."

The court's instruction correctly stated the elements of manslaughter. ORS 163.040.

Affirmed.