Argued November 16, 1976, affirmed January 17, reconsideration denied February 23, petition for review allowed March 29, 1977

# STATE OF OREGON, *Respondent,*
### *v.*
# DAVID ANDREW JONES, *Appellant.*
## (No. 75-4983, CA 6301)
558 P2d 1271

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

LEE, J.

**LEE, J.**

Indicted for the crime of rape in the first degree, ORS 163.375,[1] defendant was found guilty by a jury and, as a "dangerous offender," sentenced to a term of imprisonment not to exceed 30 years. On appeal defendant initially argues that his conviction ought to be reversed, contending both that the state was permitted to introduce and rely upon evidence obtained in an unlawful manner, and that "forensic misconduct"[2] on the part of the prosecutor denied him a fair trial. Defendant also contends that should his conviction be upheld the sentence imposed must be vacated for the reason that Oregon's "dangerous offender" statute— ORS 161.725—grants a court "unlimited discretion" to decide whether a given defendant will be subjected to the enhanced penalties authorized therein and is, therefore, violative of the Equal Protection Clauses of both the Oregon and the United States Constitutions.[3]

■  The evidence defendant alleges to have been unlawfully obtained and improperly introduced consists of a blood sample, used to determine defendant's blood type, which was acquired under authority of a search warrant issued by a Lane County district court judge.

---

[1] "(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male * * *

"* * * * *

"(2) Rape in the first degree is a Class A felony." ORS 163.375.

[2] "Prosecutor's forensic misconduct may be generally defined as any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law. It commonly involves an appeal to the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors. The jury may also be encouraged to disregard the weighing process prescribed by law and substitute one more favorable to the state, or otherwise to misapprehend its functions." Note, *Forensic Misconduct*, 54 Colum L Rev 946, 949 (1954).

[3] US Const, Amend XIV; Or Const, Art I, § 20.

That warrant had been issued following the filing by a deputy district attorney of a sworn affidavit indicating that the determination of defendant's blood type was necessary to the completion of the investigation into the crime charged.[4] Apparently conceding that the state did, in fact, have good cause for requesting a sample of his blood, defendant argues nonetheless that the admission into evidence of the sample eventually obtained denied him due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, as well as his constitutional right to be free from unreasonable searches and seizures, because the means employed to actually obtain that sample following the issuance of the search warrant was both unreasonable and unconscionable.

Prior to the acquisition of the search warrant by the state defendant had both refused to consent to the taking of a blood sample and indicated that he would resist any effort to obtain such a sample. At the time officers attempted to have a registered nurse withdraw the blood required pursuant to the warrant, defendant, then being held in custody at the Lane County Jail, did, in fact, physically and forcefully resist. As a result of that resistance the nurse was required to withdraw the blood from defendant's arm while he was being physically restrained.

Although defendant acknowledges that the actual extraction of his blood was made in a medically acceptable manner, he argues that the seizure was nonetheless unlawful because (1) unnecessary force was employed by the officers assisting that nurse, and (2) the forceful withdrawal was carried out at the county jail rather than in a "hospital environment."

As noted above, however, it was defendant's own

---

[4]The victim, whose own blood was that of Type "A," was menstruating at the time of the alleged rape. Traces of what was determined to be blood, Type "A," were found on the undershorts worn by defendant at the time of his arrest shortly after the alleged rape. The eventual analysis of defendant's own blood indicated that it was of Type "O"; the blood found on his undershorts could not, therefore, have been his own.

physical resistance which evoked the use of force by the officers assisting in the blood withdrawal; the record does not indicate that the force employed by those officers was either excessive or inappropriate under the circumstances. Neither do we believe the law to be that in every case blood must be withdrawn in a hospital environment in order to be admissible. Under the circumstances of this case the means and procedures employed by the state to secure the blood sample, as authorized by the warrant lawfully obtained, were neither "shocking" nor "unreasonable"; accordingly, the seizure and use of that "evidence" resulted in no constitutional violation. *See Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966); *Breithaupt v. Abram,* 352 US 432, 77 S Ct 408, 1 L Ed 2d 448 (1957); *cf., Rochin v. California,* 342 US 165, 72 S Ct 205, 96 L Ed 183 (1952).

■ Assuming, arguendo, that defendant's "assignment of error" with respect to the alleged "forensic misconduct" on the part of the prosecutor amounts to an appeal from the trial court's denial of his motion for a mistrial,[5] we are satisfied that, while the deputy district attorney did, in fact, address some questions of doubtful propriety to more than one witness, it is highly unlikely that those questions resulted in any prejudice to the defendant.

---

[5]Rule 6.18 of the Rules of Procedure for the Supreme Court and Court of Appeals provides that "[i]n appeals in actions at law, no alleged *error of the trial court* will be considered on appeal unless regularly assigned as error in the appellant's * * * opening brief." (Emphasis supplied.) "Assignments of error" II and III included in defendant's brief allege simply that "[t]he prosecution's persistent efforts * * * to blacken defendant's character in the jury's eyes denied him a fair trial." "Prosecutorial misconduct was so rampant that defendant was unable to receive a fair and impartial trial." In support of these "assignments" defendant has referred us to various portions of the transcript he regards as illustrative of "forensic misconduct"; he has not, however, specifically assigned as error either the overruling of any objections he made at trial or the denial of any motion for a mistrial, although he did, in fact, make two such motions during the course of the trial which were denied. Although we have in this case chosen to address the substantive issue ostensibly raised by defendant's "assignments," we wish to emphasize that we may in the future decline to consider "assignments" not framed in accordance with the requirements of Rule 6.18.

■ As noted in *State v. Seeger,* 4 Or App 336, 479 P2d 240 (1971), the dispositive question in every case in which misconduct on the part of the prosecutor is demonstrated is

"'* * * whether the defendant was prejudiced by the conduct or remark, i.e., whether the jury was likely influenced thereby * * *." 4 Or App at 338.

When considered in the context of the answers elicited by the arguably improper questions, the admonishments and instructions of the trial judge elicited by defendant's objections, and the additional evidence produced by the state, the alleged "misconduct" of the prosecutor in this case could not we believe have resulted in any prejudice to the defendant. *See State v. Griffin,* 19 Or App 822, 529 P2d 399 (1974); *State v. Payton,* 19 Or App 181, 526 P2d 1397 (1974); *State v. Gairson,* 5 Or App 464, 484 P2d 854, Sup Ct *review denied* (1971).

In support of the argument that Oregon's existing "dangerous offender" statutes are unconstitutional, defendant refers us to *State of Oregon v. Cory,* 204 Or 235, 282 P2d 1054 (1955), a case in which the Supreme Court ruled that a portion of a prior "habitual criminal" act—former ORS 168.040[6]—did, in fact, violate the equal protection provisions of both the United States and the Oregon Constitutions. Former ORS 168.040 provided in effect that in any case in which a defendant with a prior felony record was convicted of a crime involving violence or a threat of violence the district attorney was obligated to initiate a "habitual criminal" proceeding; the statute also provided that in "other cases"—i.e., those in which a defendant with a prior felony record was convicted of a crime involving neither violence nor the threat of violence—the district attorney might choose to initiate such a proceeding at his own discretion.[7] In *Cory* the court invali-

---

[6] *Repealed* Oregon Laws 1961, ch 648, § 13.

[7] Former ORS 168.040 specifically provided:

"(1) If at any time within two years after conviction the district

dated *only* that portion of the statute which permitted the district attorney to initiate a proceeding at his own discretion, pointing out that:

> "In the portion of the statute being considered there is no yardstick or semblance of classification which would enable the district attorney to determine under what circumstances [a proceeding] should be [initiated]. The exercise of an absolute discretion is vested in the district attorney in such a circumstance. In other words, the fate of persons, even to the extent of life imprisonment, who have committed the same acts under the same circumstances and in like situations is determined by the whim and caprice of the district attorney." 204 Or at 240.

Subsequent to its decision in *Cory,* the court had occasion to note that what it had condemned in that case was the delegation of "unbridled discretion," indicating at the same time that a statute need not provide a mechanistic rule, depriving a sentencing judge of all discretionary authority, in order to meet constitutional standards.[8]

■ The "dangerous offender"—i.e., "habitual criminal"— statutes under which defendant in this case was sentenced provide that an enhanced sentence may be imposed in any case where the sentencing court finds

> "* * * that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS

---

attorney of the county in which the conviction was had has reason to believe that the convicted person has previously been convicted within or without this state of any felony, he shall immediately investigate.

"(2) If, upon investigation, it is determined by competent evidence that the person has been so previously convicted, the district attorney, *in cases of crime involving violence or threat of violence to person, shall, and in other cases, may,* immediately file an information accusing the person of the previous convictions and serve a copy of the information upon him. The information shall be filed within two years after the last conviction, and a copy served on the defendant 30 days before any further proceedings are taken in court.

"* * * * *." (Emphasis supplied.)

[8] *State v. Hicks,* 213 Or 619, 632-34, 325 P2d 794 (1958), *cert denied* 359 US 917 (1959).

161.735[9] that one or more of the following grounds exist:

"(1) The defendant is being sentenced for a Class A felony, and the court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"(2) The defendant is being sentenced for a felony that seriously endangered the life or safety of another, has been previously convicted of a felony not related to the instant crime as a single criminal episode, and the court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"* * * * *." ORS 161.725.

Admittedly, this statute does not entirely eliminate the element of discretion from the process of determining whether a given individual should be treated as a "dangerous offender"; neither, however, does it grant the sentencing judge an "unbridled discretion." The class of defendants to which the dangerous offender

[9] ORS 161.735 provides in pertinent part:

"(1) Whenever, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and a psychiatric examination. The court may appoint one or more qualified psychiatrists to examine the defendant or may order that he be taken by the sheriff to a state hospital designated by the Mental Health Division for the examination.

"* * * * *

"(3) The psychiatric examination shall be completed within 30 days, subject to additional extensions not exceeding 30 days on order of the court. The psychiatrist shall file with the court a written report of his findings and conclusions, including an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"* * * * *

"(5) Upon receipt of the psychiatric examination and presentence reports the court shall set a time for a presentence hearing, unless the district attorney and the defendant waive the hearing. At the presentence hearing the district attorney and the defendant may examine the psychiatrist who filed the report regarding the defendant.

"(6) If, after considering the presentence report, the psychiatric report and the evidence in the case or on the presentence hearing, the court finds that the defendant comes within ORS 161.725, the court may sentence the defendant as a dangerous offender.

"* * * * *."

classification may have application is described with specificity; the court is required to employ a specific procedure in order to determine whether any given individual falling within that class ought to be subjected to extended incarceration; and as a prerequisite to the imposition of an enhanced sentence, the court is required to find both that a defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity and that an extended period of incarceration is required for the protection of the public.

As so drafted the dangerous offender statute imposes specific limits upon the discretion to be exercised by the court in any given case; it does not, therefore, suffer the same deficiency as the statutory provision held to be unconstitutional in *Cory.*

Affirmed.