**Willie Craig WILLIAMS, Jr., Petitioner,**

v.

**Charles L. WOLFF, Jr., et al., Respondents.**

**No. CIV–R–80–115–ECR.**

United States District Court, D. Nevada.

June 3, 1981.

Michael K. Powell, Powell & Ray, Ltd., Carson City, Nev., for petitioner.

Richard Bryan, Atty. Gen., Carson City, Nev., Jerry Mowbray, Deputy Dist. Atty., Reno, Nev., for respondents.

## MEMORANDUM DECISION

EDWARD C. REED, Jr., District Judge.

Petitioner was convicted by a Nevada District Court jury of sexual assault (rape). On appeal, the conviction was affirmed by the Nevada Supreme Court. A petition for rehearing, on the ground that Petitioner had not been given an opportunity to answer arguments first made in Respondents' brief, was denied.

A petition for writ of habeas corpus directed to this United States District Court was referred to Magistrate Phyllis Halsey Atkins. Pursuant to 28 U.S.C. § 636(b), the Magistrate has filed proposed findings and a recommendation. The recommendation is that the petition be denied.

Objections to the findings and recommendation have been filed by Petitioner, claiming error with respect to three legal issues: (1) The trial court's admission into evidence of the testimony of two young women who described the circumstances of their alleged rape by Petitioner some eighteen months prior to the rape for which he was convicted; (2) Prosecutorial misconduct in the opening and closing arguments to the jury; and (3) The procedure followed by the Nevada Supreme Court in determining Petitioner's appeal.

The undersigned has made de novo determinations as to those three issues. The entire record from the Nevada District Court and the Nevada Supreme Court has been made available and has been studied. There are no significant factual disputes; the issues raised are as to the legal ramifications of what took place in the State courts.

The recommendation of the Magistrate is accepted. The findings of the Magistrate also are accepted insofar as they go, but are modified by supplementation, as discussed below.

*Admission into Evidence of Testimony of Prior Rape Victims*

The act of rape for which Petitioner was convicted occurred in April 1978. At the trial, two young women testified that he had raped both of them one evening in September 1976. Petitioner was never charged as to either alleged prior rape.

By a motion in limine, Petitioner had sought to exclude any such testimony concerning prior uncharged misconduct. The trial judge required the prosecutor to make an offer of proof, which consisted of an offer to bring five young women in to testify that Petitioner had made sexual advances to them under very similar circumstances. Two of them had been raped, whereas the other three had managed to escape.

The trial court held that such evidence would be admissible on the issue of intent, provided the circumstances were similar enough to those surrounding the crime charged. Rather than have the witnesses brought in to be examined in the absence of the jury, the Court stated that it would let their examinations be conducted in the presence of the jury. However, the judge declared that he would halt the testimony if it appeared that the circumstances were not sufficiently similar to those of the charged offense. Since he would not be able to compare until after the prosecutrix had testified, he denied the motion in limine. Nevertheless, he emphasized that the question of admissibility remained contingent upon his finding that the circumstances were similar enough. Thus, he reserved his ruling on admissibility.

After the prosecution had presented its case in chief, including the testimony of the prosecutrix, the defendant (Petitioner herein) took the stand. He testified that he had had sexual intercourse with the prosecutrix, but that she had consented to the same. In

fact, he said, she had initiated the sexual advances.

The trial judge then let the two young women testify, in rebuttal, as to the circumstances of their alleged prior rape by Petitioner. In answer to the subsequent request of Petitioner's attorney for a ruling as to the purpose in admitting such evidence, the trial court stated that it had found the circumstances to be so similar that the prior incidents were relevant on the question of Petitioner's intent to have intercourse with the prosecutrix regardless of whether she consented. The trial court also mentioned that Petitioner's denial of any intent to have a sexual relationship with the prosecutrix reinforced the relevancy of the prior occurrences. The judge informed both counsel that the jury would be instructed that the testimony of the other purported victims could be considered only with regard to Petitioner's intent. Such an instruction was given at the appropriate time. Instruction No. 16 told the jurors:

> "Evidence of sexual assaults other than the one with which the defendant has been charged has been admitted on the limited question of whether or not the defendant intended to engage in sexual activity with the alleged victim against her will, and should not be considered for any other purpose."

Certain similar circumstances were mutually acknowledged in testimony by Petitioner, the prosecutrix, and the two purported prior victims. The initial meeting of Petitioner with each of the three women occurred because Petitioner had made known that a job was open in a business he owned, and the girls had applied for such employment. In each case Petitioner had said that his schedule was so busy that any interview would have to be conducted in the evening. Likewise, Petitioner had informed each of the applicants, during the interview, that he was very proficient at karate, and had demonstrated karate holds.

The Magistrate, in her report to this Court, says that state trial court errors in admitting testimony of alleged prior misconduct do not have constitutional over-tones. The report quotes from the opinion in *Crisafi v. Oliver*, 396 F.2d 293 (9th Cir. 1968), to the effect that a federally significant external event, such as the voluntariness of a confession or the use of perjured testimony, may be questioned in a federal habeas corpus proceeding. However, the admission of testimony concerning a prior rape charge, of which Crisafi had been acquitted, did not deprive him of a constitutional right.

Magistrate Atkins further held that N.R.S. 48.045(2), which permits evidence of other wrongs or acts to be admitted to prove intent, gave the trial court the right to exercise its discretion as it did in Petitioner's case. She reports that the testimony of Petitioner, that he had no intent to have sexual relations with the prosecutrix at all, made evidence as to his intent relevant. The similarity of the circumstances of the two prior purported rapes made testimony concerning them probative of Petitioner's intent, according to the Magistrate.

In his objections to the Magistrate's findings and recommendation, Petitioner argues that his intent was not relevant to the issues at trial. He cites the case of *Dinkens v. State*, 92 Nev. 74, 546 P.2d 228 (1976), for the proposition that when a defendant admits having had sexual intercourse with the prosecutrix, as did Petitioner at his trial, the central issue becomes the consent of the prosecutrix, rather than the intent of the defendant. In substance, he argues that there couldn't have been such intercourse in the absence of intent on his part. Therefore, his intent was not an issue—only the consent or lack of consent of the prosecutrix should have been inquired into.

Said Petitioner's objections raise the further point that any similar circumstances from which intent may be gleaned must be those surrounding the crime for which he is standing trial, and not from activities that may have occurred a year and a half earlier.

Finally, Petitioner contends that, in the exercise of its discretion whether to admit evidence of prior misconduct, the trial court must balance the probative weight of such evidence against its prejudicial effect. This

the trial court couldn't have done, he argues, for it let the testimony of the two young women be heard by the jury before ruling it relevant and admissible. It would have been impossible to eradicate the prejudicial effect of the testimony had it been insufficiently similar to be admissible. Petitioner cites *United States v. Sangrey*, 586 F.2d 1312 (9th Cir. 1978) for the rule that it must be clear from the record that the balancing did, in fact, occur. Nowhere in the record did the trial judge state in so many words that he had balanced probative weight against prejudicial effect. The result was a denial of a fair trial and a deprivation of due process, according to Petitioner.

Petitioner made these same arguments to the Nevada Supreme Court, which rejected them in *Williams v. State*, 95 Nev. 830, 603 P.2d 694 (1979). It disagreed with the argument that only the victim's consent, and not the accused's intent, was at issue. At 603 P.2d 697, the opinion reads:

"The crucial question in determining if a sexual assault has occurred is whether the act is committed without the consent of the victim, *Dinkens v. State*, 92 Nev. 74, 546 P.2d 228 (1976), and the intent of the accused is relevant to the issue of consent or lack thereof. *State v. Hampton*, 215 Kan. 907, 529 P.2d 127 (1974). In the instant case, evidence of Williams' sexual misconduct with other persons was admitted as being relevant to prove his intent to have intercourse with the victim without her consent. This evidence was introduced after Williams admitted committing the act, but claimed to have done so with the victim's consent. By acknowledging the commission of the act but asserting his innocent intent by claiming consent as a defense, Williams himself placed in issue a necessary element of the offense and it was, therefore, proper for the prosecution to present the challenged evidence, which was relevant on the issue of intent, in order to rebut Williams' testimony on a point material to the establishment of his guilt. (Citations omitted).

"The remarkable similarity of the *modus operandi* in the testimony regarding the other crimes, and their relative proximity in time to the charged offense establish the probative value of such evidence."

Finally, the Williams' opinion indicates that necessity justified admission of the testimony of the two purported prior victims, since Williams' intent to commit the act without consent (a necessary element of the crime charged) was not substantially established by other evidence. As is usually the case, it was essentially the prosecutrix' word against Williams', except for the testimony of the prior victims.

The legal principles expounded by the Nevada Supreme Court in the Williams' case find support both in other Nevada cases and in other jurisdictions. For example, an essential element of the crime of rape is proof that the act was committed against the victim's will. *State v. Havas*, 95 Nev. 706, 601 P.2d 1197 (1979); *Dinkens v. State*, 92 Nev. 74, 546 P.2d 228 (1976). This is the equivalent of showing that the act was committed without the woman's consent. *Id.* Havas teaches that other evidence that supports or refutes the testimony of the prosecutrix and the defendant "has the potential for great significance", because the act of rape seldom has third-party witnesses. 601 P.2d at 1198. Moreover, when the defendant admits a sexual relationship with the prosecutrix but asserts his innocent intent, he has placed at issue the essential element of intent; therefore ". . . the prosecution may then introduce evidence that the defendant has committed similar offenses upon a person or persons other than the prosecuting witness in order to rebut the testimony of the defendant on a point material to the establishment of his guilt of the crime charged." *People v. Westek*, 31 Cal.2d 469, 190 P.2d 9, 16 (1948).

The current trend is to admit testimony from third persons as to prior acts of the defendant in cases involving sexual offenses. For a listing of such cases, see *Elliott v. State*, 600 P.2d 1044 (Wyo.1979). *Nester v. State*, 75 Nev. 41, 334 P.2d 524

(1959) discussed favorably California cases which held that where a prior rape was committed under circumstances remarkably similar to the one charged, the evidence of the prior act is admissible to show that there existed in the mind of the defendant a plan, scheme, system or design into which fitted the commission of the offense for which he is being tried. *Crisafi v. Oliver*, 396 F.2d 293 (9th Cir. 1968) held that testimony as to a prior alleged crime of the defendant, which testimony is offered only to show a peculiar or characteristic behavior pattern of the defendant, is admissible to show that he was guilty of the crime charged.

A case much in point is *Oliphant v. Koehler*, 594 F.2d 547 (6th Cir. 1979). There the defendant objected to the testimony at his trial of three women who previously had accused him of rape, where a fourth victim was the prosecutrix. There were similarities in the circumstances. The Court opined, at page 552: "The many similarities in all four cases tend to show a plan and scheme to orchestrate the events surrounding the rape of complainant so that she could not show nonconsent and the defendant could thereby escape punishment." Such evidence was held to be probative of a matter in issue—nonconsent. The same case mentions that the dearth of evidence on consent, other than the contradictory testimony of complainant and defendant, makes testimony as to the similar circumstances of other misconduct by the defendant particularly important. The Ninth Circuit, in *United States v. Potter*, 616 F.2d 384 (9th Cir. 1979) made a point that there was no other kind of evidence having more probative value and involving less likelihood of prejudice.

The remoteness of the prior misconduct has been recognized as a factor in determining relevancy. However, in *Simpson v. State*, 94 Nev. 760, 587 P.2d 1319 (1978), four years was considered close enough in time, as was three years in *Elliott v. State*, *supra*.

As to Petitioner's contention that it must be clear from the record that the trial court did balance probative weight of the challenged testimony against prejudicial effect, the Ninth Circuit has held that there need not be formal articulation by the judge that he did perform the balancing test. *United States v. Sangrey*, 586 F.2d 1312 (9th Cir. 1978); *United States v. Potter, supra*. In *Sangrey*, the appellate court found it significant that defense counsel had argued the issue of prejudice during his motion in limine. The same is true here. In *Potter*, the appellate court performed its own balancing test by evaluating the record, and held that any error by the trial judge in failing to articulate his reasons did not affect substantial rights of the defendant.

The Magistrate's position, that any error made by the trial court in admitting evidence as to the prior purported rapes did not have constitutional overtones, is well supported by cases. The United States Supreme Court, in *Lisenba v. California*, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), ruled that the admissibility of evidence of another similar crime to establish intent is left by the Fourteenth Amendment to be determined by the state courts under state law. The Ninth Circuit agrees—error in admitting evidence of similar uncharged offenses allegedly committed by the defendant does not raise a federal question. *Hughes v. Heinze*, 268 F.2d 864 (9th Cir. 1959). The role of a federal habeas corpus petition is not to serve as an additional appeal. *Grundler v. State of North Carolina*, 283 F.2d 798 (4th Cir. 1960). The fact that the state supreme court has considered the evidentiary issues on appeal, as was the case here, is of importance, for only matters of state law are involved. *See Oliphant v. Koehler, supra; Collins v. Heinze*, 125 F.Supp. 186 (N.D.Cal.1954), *aff'd* 217 F.2d 62 (9th Cir. 1954).

Since Petitioner claims he was denied a fair trial, this Court has carefully reviewed the record. There is no indication of such fundamental unfairness as would justify intervention by habeas corpus. The Magistrate is correct that any errors as to admissibility of evidence did not result in deprivation of any federal constitutional rights.

*Prosecutor's Remarks to the Jury*

█ Petitioner complains that an allegedly "dangerous propensity" of his was mentioned by the prosecutor during his opening statement, and alluded to again during closing arguments. In addition, Petitioner objects that the prosecutor's explanation that the State had to "pass" on prosecuting him for the prior purported rapes of the two young women, who were witnesses, amounted to an urging that the jury ought to convict him because he had escaped punishment for that misconduct. Further, the prosecutor's reference to Petitioner as a "bully, rapist and liar" is considered plain error by Petitioner, as a personal attack on the credibility of a witness. He contends that the prosecutorial misconduct deprived him of a fair trial.

Magistrate Atkins, in her report, held that habeas corpus is appropriate only when the prejudicial effect of remarks rises to such magnitude as to amount to a denial of fundamental fairness and due process. She didn't find such magnitude, especially since the trial judge instructed the jury that statements of counsel are not evidence.

During his opening statement, the prosecutor said that the prosecutrix' private attorney had accompanied her to the prosecutor's office because that attorney "had been involved with this defendant and knew about his dangerous propensity."

On at least nine separate occasions during his final argument, the prosecutor referred to Petitioner as a liar. This was in addition to less offensive remarks, such as that Petitioner doesn't know how to tell the truth and that he violated his oath to God on the witness stand. The prosecutor also called Petitioner a bully and a rapist three times.

In discussing why Petitioner had not been charged with the rapes of the two witnesses, the prosecutor, during his closing statement, said that physical tests were made too late to obtain evidence of intercourse. "We have to pass on those."

The Nevada Supreme Court, in considering Petitioner's appeal, held: "Although such remarks may have been improper, a review of the record does not establish that Williams was thereby prejudiced." *Williams v. State*, 95 Nev. 830, 603 P.2d 694, 697 (1979). The Court made a nearly identical holding in *Sanders v. State*, 96 Nev. Adv.Op. 87, 609 P.2d 324 (1980).

The Ninth Circuit is in accord: "Improprieties in counsels' arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977). The same case noted that the trial judge's instruction to the jury that counsels' closing statements should not be considered evidence tended to neutralize any prejudice.

In Petitioner's trial, the judge instructed the jury that anything counsel says during the trial is not evidence. He gave such an instruction before counsels' opening statements, before their closing statements and as part of Instruction No. 5.

It is doubtful that personal name calling ever persuades a jury to convict a defendant. In fact, such insults directed towards a defendant who cannot respond as he might in a one-on-one situation, could well arouse sympathy for the defendant.

The Court in *State v. Gairson*, 5 Or.App. 464, 484 P.2d 854 (1971) stated that improper remarks of counsel may be ground for a new trial only when real prejudice results to the defendant from such remarks. There, the prosecutor referred to the defendant as a "vicious murderous pig" and expressed his personal belief as to the credibility of a witness. The strength of the evidence as to the defendant's guilt helped persuade the Court that the improper remarks were not sufficiently hurtful to warrant a new trial. *See also State v. Tucker*, 26 Ariz.App. 376, 548 P.2d 1188 (1976).

I agree with the Magistrate that the record does not disclose prejudice to Petitioner from the improper remarks, especially in light of the trial judge's neutralizing instructions to the jury.

*Procedure on Appeal*

 Since Petitioner's appeal to the Nevada Supreme Court involved no substantial factual disputes, but only questions of law, the Court directed the case to be submitted on briefs, without oral argument.

The prosecution was granted seven extensions of time to file its brief, but didn't file it until ten days after the expiration of the last extension. After the State Supreme Court had affirmed his conviction, Petitioner requested a rehearing. He contended that the Court had relied heavily on concepts raised for the first time in the prosecution's untimely brief. Those concepts were modus operandi and evidentiary necessity. Because there was no oral argument, Petitioner had no opportunity to argue against the use of such concepts.

The Supreme Court denied a rehearing in an order signed by all five justices. The order flatly stated, "Respondent's brief, however, not having been timely filed, was not considered in our review of this matter."

Petitioner's position is that the Supreme Court, on an appeal from a judgment of a trial court, may not consider anything outside the record made below. While this is true as to evidentiary matters, it certainly is untrue with respect to legal theories. Many times lower court judgments are affirmed even though they have reached the right results for the wrong reasons. *See*, e. g., *Moll v. Nevada Young American Homes, Inc.*, 93 Nev. 68, 560 P.2d 152 (1977); *Wyatt v. State*, 86 Nev. 294, 468 P.2d 338 (1970). An appeal may be disposed of on points and issues not raised by either party. *Hall v. American National Plastics, Inc.*, 73 Wash.2d 203, 437 P.2d 693 (1968). Therefore, the Nevada Supreme Court was free to apply the concepts of modus operandi and evidentiary necessity even though the trial court didn't utilize them and even though they were not expounded in the only brief considered by the Court.

An order denying Petitioner's petition for a writ of habeas corpus shall be entered forthwith.

This Memorandum Decision shall be deemed to constitute the Court's findings of fact and conclusions of law.